KRENIE STOWE & another[1] *vs.* VINCENT BOLOGNA
& another.[2]

No. 90-P-578.

Middlesex. March 31, 1992. - May 29, 1992.

Present: KASS, JACOBS, & LAURENCE, JJ.

Further appellate review granted, 413 Mass. 1104 (1992).

*Administrative Law*, Preclusive effect of decision, Rehearing, Adjudicatory proceeding, Decision. *Rent Control*, Rent overcharge, Controlled rental unit. *Cambridge.*

A rent control board's 1992 reexamination of classification of a particular building for rent control purposes, which was in conflict with a prior determination by the board in 1987 from which no appeal had been taken, did not have retroactive effect, in the circumstances, so as to enable the landlord to charge higher rent than was allowable under the 1987 decision. [617-619]

CIVIL ACTION commenced in the Superior Court Department on December 11, 1987.

A motion for summary judgment was heard by *Robert J. Hallisey*, J.

Following review by this court, 31 Mass. App. Ct. 1119 (1991), the panel considered a petition for rehearing.

*Patrick W. Hanifin* for the defendants.

*Mark D. Stern* for the plaintiffs.

*Patricia Cantor* for Rent Control Board of Cambridge.

KASS, J. On December 19, 1991, we issued an unpublished memorandum in this appeal affirming the grant, by a judge of the Superior Court, of summary judgment in favor of the plaintiffs. See 31 Mass. App. Ct. 1119. In awarding summary judgment for Krenie and Marie Stowe on their claim of rent overcharges, the motion judge had relied upon a deci-

---

[1]Marie Stowe.

[2]310 Corporation.

sion of the Cambridge rent control board (board), from which no appeal had been taken. We agreed with the judge that the board's decision was entitled to preclusive effect.

On January 21, 1992, the defendants, Vincent Bologna and the 310 Corporation (the landlord),[3] filed an application for rehearing on the ground that, in a decision dated January 18, 1992,[4] the board had altered a central factual premise and legal determination of its earlier decision of September 23, 1987, upon which the Superior Court judge had relied. The focal issue on which the board took a different position in 1992 pertained to the use classifications for rent control purposes of the landlord's property at 310 Harvard Street, Cambridge. In 1987, the board had determined that those premises consisted of eight controlled rental units; in 1992, the board determined the premises consisted of five controlled units. As the Stowes had occupied the three units now determined to be exempt from rent control,[5] their claim of rent overcharge would be much diminished if the 1992 board decision constituted a retroactive correction of the 1987 decision.

The diction of the findings and recommendations of the board's hearing officer (who was the board's executive director) which led to the 1992 decision spoke in terms of errors having been made in 1987. In light of the apparent about-face of the board, we became concerned that our decision of December 19, 1991, might have worked an injustice against the landlord. We, therefore, granted the landlord's application for rehearing and heard argument on March 31, 1992.

---

[3]The property in question was first acquired by Vincent Bologna, and he later conveyed it to 310 Corporation, of which he is a principal officer and stockholder.

[4]Ordinarily, a petition for rehearing must be filed within fourteen days after the date of the rescript. Mass.R.A.P. 27, 396 Mass. 1218 (1986). We allowed an enlargement of time to file the petition because the decision of the board which provided the basis for the petition had not been issued until after the fourteen-day period had expired and thereafter Bologna and 310 Corporation had acted very promptly.

[5]Indeed, the Stowes had rented seven of the eight units at 310 Harvard Street; the remaining unit was occupied by Bologna and his family.

1. *Summary of previous opinion.* At this point, it is appropriate to summarize our unpublished memorandum of December 19, 1991. The Stowes had complained that their landlord had violated St. 1976, c. 36, § 11(*a*), by charging more rent for the leased premises than permitted by the board. In addition, the Stowes lodged a claim under G. L. c. 186, § 15B(3)(*a*), which requires a landlord to hold a security deposit in a separate interest-bearing account in a Massachusetts bank and to provide a receipt and information to the tenants concerning that deposit. A third category of claim involved an asserted violation of G. L. c. 186, § 14, which imposes a minimum sanction of three months' rent for, among other things, interference with furnishing by another of utility services. In this particular case, the complaint was that the landlord had interfered with the telephone installer connecting telephone lines for a subtenant of the plaintiffs. The Superior Court judge found liability on all three categories claimed and entered an aggregate judgment of $35,991.20, plus $28,019.62 on account of attorneys' fees and expenses, a grand total of $64,010.82.

In terms of dollar consequences, the most serious category of claim was that relating to rent overcharge. Whether there had been an overcharge depended on whether the premises were "controlled" during the period in question and, if "controlled," what the allowable rent was. The Superior Court judge relied on the administrative decision made by the board on September 23, 1987, in which both points had been determined. The landlord sought no judicial review of that administrative determination under the provision of St. 1976, c. 36, § 10, as amended by St. 1985, c. 399. Accordingly, the decision of the board was in full force at all times when the matter came before the Superior Court judge, and he rightly accepted the board's determination about the status of the premises, including the legal maximum rent.[6] In view of its final and unappealed status, the

_____

[6]It is tangentially interesting that by a decision dated February 27, 1989, the board denied an application to remove the premises from the list of rent controlled units. This time the landlord did seek judicial review,

decision of the board concerning the status of the premises was binding upon the Superior Court judge. A final order of an administrative agency in an adjudicatory proceeding, not appealed from and as to which the appeal period has expired, precludes relitigation of the same issues between the same parties, just as would a final judgment of a court of competent jurisdiction. *United States* v. *Utah Constr. & Mining Co.*, 384 U.S. 394, 421-422 (1966). *Almeida* v. *Travelers Ins. Co.*, 383 Mass. 226, 229-230 (1981). Davis, Administrative Law § 21.2 (2d ed. 1983).[7] Once the binding force of the board's 1987 decision was established, it followed that the judge had acted within the discretion conferred upon him by St. 1976, c. 36, § 11, when he imposed a sanction of $15,000 on the landlord on account of excess rent charges. Under the statute, the judge could have awarded three times the excess rent charge; the $15,000 was less than double the excess rent.

We need not revisit the discussion in our prior memorandum of the damages awarded on account of the security deposit violation and on account of interference with utilities. The resolution of those issues is unaffected by the point the landlord raises on rehearing. That point is, the board having reexamined and revised its earlier decision, the judgment based thereon should similarly be reexamined and revised.

2. *Authority of administrative agency to reopen its proceedings.* In the absence of express or perceived statutory limitations, administrative agencies possess an inherent power to reconsider their decisions. *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700, 703-706 (1985). *Turnbladh* v. *District Ct. of Ramsey County*, 259 Minn. 228, 236 (1960). *Duvin* v. *State*, 76 N.J. 203, 207 (1978).

---

and the administrative decision was affirmed by a decision of the District Court on July 9, 1990. No appeal was taken from the District Court judgment.

[7]A court is without jurisdiction to review the order of an administrative agency if judicial review proceedings are not timely instituted. *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 668-669 (1984). The time prescribed by the Cambridge Rent Control Act is thirty days. See St. 1985, c. 399, § 3; G. L. c. 30A, § 14(1).

Davis, Administrative Law Treatise § 18.09, at 608-611 (1958). Compare *Lawrence N. Brandt, Inc.* v. *Montgomery County Commn. on Landlord-Tenant Affairs*, 39 Md. App. 147, 160 (1978), in which the court limited to the period within which a party could take a timely appeal the power of an agency to reconsider its decision denying a rent adjustment.

That a fraud may have been worked on the administrative agency is among the most compelling reasons for reopening one of its decisions, see *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. at 706, and, as we suggested in that case, there will be other occasions to reopen an administrative proceeding, although the power so to do must be sparingly used if administrative decisons are to have resolving force on which persons can rely.

Administrative decisions, even if adjudicatory in the sense that they determine rights and duties of specifically named persons,[8] frequently have a regulatory component that may warrant reexamination in the light of changes in regulation, purpose, later decisional law, or applicable on-the-ground facts. See *Ramponi* v. *Selectmen of Weymouth*, 26 Mass. App. Ct. 826, 829-830 (1989). The case of 310 Harvard Street is illustrative. What triggered the 1987 proceedings was the very particular and personal dispute between the tenants (the Stowes) of 310 Harvard Street and the landlord — a dispute whose outcome was going to depend on how the board classified the property which the tenants had rented. By 1991, the Stowes had given up their lease and moved elsewhere, and the landlord initiated the proceedings which led to the January 21, 1992, decision.

The landlord did not move to reopen the 1987 case; rather, the landlord brought a new petition (which received a new docket number at the board) to have units three, five, six, and seven declared exempt from rent control as newly-con-

---

[8]See G. L. c. 30A, § 1(1); *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry*, 404 Mass. 211, 214 (1989); Davis, Administrative Law § 15:03 (1958).

structed units.[9] In initiating the new proceeding, the landlord articulated no purpose to alter any position in relation to the Stowes as former tenants. So far as appeared, the purpose of the 1991 petition was to legitimize the physical alterations the landlord had made and to enable the landlord to charge higher rent than was allowable under the old decision.

There were three other reasons to reexamine the unit composition in the locus from a rent control point of view. First, there had been legislative activity[10] involving conflicts between the Cambridge zoning ordinance and rent control classifications. Second, in our memorandum of December 19, 1991, we had urged that the board "give some intelligent consideration, free from vengeful wrath, as to what should be done with the locus in the future. . . . It is unseemly that one branch of the municipal government, i.e., the rent control board, should press for perpetuation of what a city, as a matter of land use planning, has decided is no longer appropriate."[11] Third, our opinion in *Zuker* v. *Cambridge*, 29 Mass. App. Ct. 384 (1990), had concluded that an owner could remodel vacant space without first obtaining a removal permit from the board. That decision might have a bearing on some of the space which had been altered and improved at 310 Harvard Street.

For those reasons, the proceedings begun in 1991 were not so much a reopening of the 1987 case as they were a revisiting of the unit classification question posed in the 1987 case in the light of subsequent events and for purposes of future regulation. See *Ramponi* v. *Selectmen of Weymouth*, 26 Mass. App. Ct. at 829-830.

3. *Retroactive or prospective effect.* Our view of the future-looking character of the 1992 decision obviously tends to a conclusion that it should be given prospective rather than retroactive effect. The decision should not be read to disturb

---

[9]Unit three was found not to be not newly-constructed and, hence, remained subject to rent control.

[10]See Cambridge Ordinance No. 1093, adopted December 26, 1989, and repealed January 9, 1990.

[11]This was a reference to the gridlock produced by conflicting requirements of the Cambridge zoning ordinance and the board.

rights and obligations between the landlord and third persons, i.e., persons other than the board, which flowed from the board's 1987 decision.[12]

Even if seen as a reopening of the same case, there is reason to view the new result as having prospective effect only. The same considerations — finality, cessation of litigation, the ability to act in reliance that a dispute is resolved — which inhere in giving preclusive effect to final judgments[13] pertain, as we have already observed, to final determinations of administrative agencies as they affect the rights and obligations of parties to a particular controversy dependent on the agency determination. So it is that the Stowes' entitlement to a rent refund plus certain penalties was determined by the 1987 proceeding. When the landlord failed to appeal from that decision, it was no longer subject to attack except for those same reasons and within those time limits as are set forth in Mass.R.Civ.P. 60(b), 365 Mass. 828 (1974). See *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. at 705-706. Those reasons, principally, are mistake, inadvertence, excusable neglect, newly discovered evidence, or fraud; and the time limits are a reasonable time but, as to the causes just enumerated, not more than one year. Here, some four years elapsed between the original 1987 decision and the proceeding which began in 1991. As it pertained to rights and obligations of the Stowes and their landlord, the .1987 decision of the board was no longer susceptible to reconsideration. Our suggestion of recourse to the standards of rule

---

[12]On rehearing, we requested the board, which is not a party to the appeal, to appear and explain the circumstances of the 1992 decision. The board said that it had reexamined the 310 Harvard Street case in fairness to the owner of the property but with intent to have its decision be prospectively effective only. The board called to attention that, had it thought the decision would have retrospective effect, it would have served notice of hearing on the Stowes and granted them the right to appear. In its response, the board asserted a right to expunge its 1992 decision were we to give it retrospective effect. How the 1992 decision affected earlier events and consequent rights and obligations is an issue of law as to which the court, not the agency, ultimately makes the decision.

[13] See Restatement (Second) of Judgments, Introduction, at 11-12 (1980).

60(b) is by way of reference to an accepted and tested norm. As we remarked in the *Aronson* opinion, it is open to an administrative agency by its own procedural rules to prescribe reasonable criteria and time limits for reconsideration. 19 Mass. App. Ct. at 708.

Upon rehearing, the judgment is affirmed. The parties shall bear their own costs of appeal, and the plaintiffs are not to have counsel fees in connection with the appeal.

*So ordered.*