CONSERVATION COMMISSION OF FALMOUTH *vs.*
ROBERT B. PACHECO.

No. 98-P-777.

Barnstable. February 7, 2000. - July 27, 2000.

Present: LAURENCE, SMITH, & GILLERMAN, JJ.

*Wetlands Protection Act. Zoning,* Wetlands. *Municipal Corporations,* Conservation commission. *Jurisdiction,* Administrative matter.

In an action brought by a conservation commission to enforce its order to restore a wetland area, the defendant could not raise on appeal an argument that the commission lacked "jurisdiction" over his property, where he had raised the issue but failed to exhaust his administrative and judicial remedies with respect to the commission's first and second orders of conditions, and where he waived the issue in a separate injunctive action against the commission involving the same locus. [744-745]

CIVIL ACTION commenced in the Superior Court Department on October 20, 1995.

The case was heard by *Elizabeth J. Dolan,* J., on motions for summary judgment.

*Robert B. Fredericks* for the defendant.

*Edward J. Dewitt (Frank K. Duffy, Jr.,* Town Counsel, with him) for the plaintiff.

LAURENCE, J. For almost a decade the appellant, Robert B. Pacheco, has resisted the Falmouth conservation commission's attempt to compel him to rectify what the commission deemed his unauthorized 1990 filling of a "wet spot" on his land lying within the buffer zone to a wetland, in asserted violation of the State Wetlands Protection Act (G. L. c. 131, § 40) and the wetland protection by-law of the town of Falmouth.[1] Despite

---

[1] General Laws c. 131, § 40, as here pertinent, prohibits any person from "fill[ing] . . . or alter[ing] any . . . fresh water wetland, . . . marsh, meadow or swamp bordering on . . . any . . . creek, river, stream, pond or lake, or any land . . . subject to . . . flooding" without local conservation commis-

periods of apparent acquiescence to the commission's orders, Pacheco has succeeded in doing essentially nothing, beyond the shuffling of papers, in response to the commission's almost preternaturally patient efforts to secure his compliance.

Pacheco now faces a mandatory injunction to do the evaded work, entered by a Superior Court judge in response to the commission's motion for summary judgment on its long-deferred complaint for enforcement of its order to restore the disturbed area. On this appeal he admits his noncompliance but attempts to justify it by reiterating a position he unsuccessfully took before both the commission and the Superior Court: namely, that the commission lacks "jurisdiction" over his property. The continued incantation of this contention finds no more success here, and we affirm the judge's order.[2]

In sum, this is not a case implicating the doctrine on which

sion approval. See *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 12-16 (1979). It also identifies as areas subject to protection those areas a conservation commission determines, after hearing, to be "significant . . . to the groundwater supply, to flood control, . . . to prevention of pollution, . . . [or] to the protection of wildlife habitat." The Falmouth wetlands protection by-law has established what the commission views as a "more expansive jurisdictional scheme" than that of § 40 (which local communities are free to do, *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 125-126 [1994]), by adding "wet meadows," "bogs," "vernal pools," "lands subject to flooding or inundation by groundwater or surface water . . . and lands within 100 feet of any of the aforesaid resource areas" to the areas requiring administrative approval before filling or altering. Pacheco himself identified the activity and area involved as "[p]roposed filling within the buffer zone of a swamp and wetland" in his August 22, 1990, notice of intent to do the restoration work the commission thought necessary; and the plan prepared by his own expert described the locus Pacheco had filled as a "wet pocket" and located it within 100 feet of two separate wetlands areas. Although Pacheco contends that the Falmouth wetlands protection by-law is not involved in this case and should not be considered, his assertion is belied by the record. Not only did his answer admit the allegation of the commission's verified complaint that the commission sought enforcement of its order under both the State statute and the town by-law, but the commission also invoked both from the first as the sources of its enforcement authority, a position adopted by both the Department of Environmental Protection and the Superior Court. In that connection, Pacheco's motion to strike all references to the by-law in the commission's brief is denied. See note 4, *infra*.

[2]The instant situation brings to mind Justice Kaplan's observation in *Aronson* v. *Brookline Rent Control Bd.*, 19 Mass. App. Ct. 700, 703 (1985): "[T]he history of administrative law shows [that] attacks, mounted ostensibly under the banner of 'jurisdiction,' have on occasion been used to delay, if not to abort, legitimate agency undertakings."

Pacheco exclusively relies — that the issue of "subject matter jurisdiction" is nonwaivable and can be raised at any point in a proceeding. That undeniably fundamental principle applies only when the jurisdictional issue has not been previously addressed and when "it is *first* raised," at whatever stage of litigation, by either the parties or the trial or appellate court on its own motion. *Litton Bus. Sys., Inc.* v. *Commissioner of Rev.*, 383 Mass. 619, 622 (1981) (emphasis added). See *Cheney* v. *Boston & Me. R.R.*, 227 Mass. 336, 337-338 (1917); *Morse* v. *O'Hara*, 247 Mass. 183, 185 (1924); *Assessors of Boston* v. *Suffolk Law Sch.*, 295 Mass. 489, 495 (1936); *Cohn* v. *Cohn*, 310 Mass. 126, 129 (1941); *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. 701, 704 (1983); *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 670 (1984).

Here, Pacheco challenged the commission's "jurisdiction" from the beginning, by claiming that the locus was too small and isolated to fall within wetlands protection. The commission explicitly addressed his objection in its 1990 order of conditions. After hearing evidence and conducting an on-site field inspection, it made specific findings supporting the validity of its exercise of authority (including findings that Pacheco had improperly minimized the size of the locus in his application, that the locus was significant for groundwater supply and flood control purposes, that it contained or was proximate to irrefutable wetlands vegetation, and that it was connected by an intermittent stream channel to a nearby cedar swamp). See Pacheco's admissions in note 1, *supra*.[3] The commission's response to Pacheco's jurisdictional objection was proper. See

[3]The commission's determination — unchallenged by Pacheco — that the area was significant for flood control and groundwater supply purposes would alone be sufficient for jurisdiction under the statute and by-law. Moreover, the Department of Environmental Protection regulations define a "stream" as "a body of running water . . . which moves in a definite channel in the ground due to hydraulic gradient, and which flows within, into or out of an Area Subject to Protection Under [the wetlands protection statute] . . . . Such a body of running water which does not flow throughout the year (i.e., which is intermittent) is a stream except for that portion upgradient of all bogs, swamps, wet meadows and marshes." 310 Code Mass. Regs. § 10.04 (1989). That definition also supports the commission's findings. Pacheco argues before us that the commission failed to make explicit findings as to the gradient of the "stream channel" observed by the commission and whether the locus was "bordering on" an appropriate body of water, see 310 Code Mass. Regs. § 10.02(1)(a) (1989) (contentions the record does not reveal were made below, which we could accordingly reject out of hand, *Beale* v. *Planning Bd.*

*East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination,* 364 Mass. 444, 452 (1973); *Wilczewski* v. *Commis-*

*of Rockland,* 423 Mass. 690, 701-702 [1996], but which the commission's finding regarding the stream channel's connection of the locus to a swamp sufficiently answers). Yet he makes not the slightest acknowledgment of the well-established deference courts owe an agency's findings of fact and interpretation of a statute (or regulations) within its charge. That deference prevents a court from interfering with an administrative determination (regulatory or adjudicatory) unless it is shown to be arbitrary or capricious, *Tarin* v. *Commissioner of the Div. of Med. Assistance,* 424 Mass. 743, 750-751 (1997); or is one supported by "no ground which 'reasonable men might deem proper' to support it," *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover,* 36 Mass. App. Ct. at 128, quoting from *Cotter* v. *Chelsea,* 329 Mass. 314, 318 (1952); or is devoid "of any conceivable ground upon which [the action] may be upheld," *American Grain Prod. Processing Inst.* v. *Department of Pub. Health,* 392 Mass. 309, 329 (1984), quoting from *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 776 (1980); or is impossible "by any reasonable construction [to] be interpreted in harmony with the legislative mandate." *Borden, Inc.* v. *Commissioner of Pub. Health,* 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Institute, Inc.* v. *Frechette,* 464 U.S. 936 (1983), quoting from *American Family Life Assur. Co.* v. *Commissioner of Ins.,* 388 Mass. 468, 477, cert. denied sub nom. *American Family Life Assur. Co.* v. *Hiam,* 464 U.S. 850 (1983). He has failed to argue, much less demonstrate, how the challenged administrative action falls afoul of these agency-friendly standards, or how the findings he contests are unsupported by the requisite "substantial evidence" (a test they appear easily to pass, see above-cited cases and *Hotchkiss* v. *State Racing Commn.,* 45 Mass. App. Ct. 684, 695-696 [1998]). He also has ignored the basic rules of appellate review mandating that, "[i]f the agency has, in the discretionary exercise of its expertise, made a 'choice between two fairly conflicting views,' and its selection reflects reasonable evidence, '[a] court may not displace [the agency's] choice,' " *Lisbon* v. *Contributory Retirement Appeal Bd.,* 41 Mass. App. Ct. 246, 257 (1996), quoting from *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.,* 386 Mass. 414, 420 (1982); and that, " '[i]f the question is fairly debatable,' we cannot substitute our judgment for that of the commission[]." *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge,* 395 Mass. 535, 553 (1985), quoting from *Borden, Inc.* v. *Commissioner of Pub. Health, supra* at 722. Indeed, penetrating to the substance and essence of Pacheco's argument here rather than accepting its form, we observe that it is not really a challenge to "jurisdiction" in any fundamental sense, nor even a claim that the commission's action was legally erroneous or inconsistent with statutory language or policies. It is rather a fairly routine complaint that the agency's fact-finding was defective and was an insufficient basis on which to exercise its statutory authority. Even if his challenge had been timely made at the appropriate points in the prior proceedings — which we hold, *infra,* it was not — we would have little difficulty sustaining the validity of the Superior Court's ruling upholding the commission's order under the recognized standards and criteria for review of administrative actions set forth in the authorities cited above.

*sioner of the Dept. of Envtl. Quality Engr.*, 404 Mass. 787, 793-794 (1989) (agency faced with contention that it is acting beyond its jurisdiction has the right and should have the opportunity to ascertain the facts and determine the jurisdictional issue for itself); *Bourne* v. *Austin*, 19 Mass. App. Ct. 738, 744 (1985) ("the applicability of the [wetlands protection] statute should be determined in the first instance by the local conservation commissions . . .").

Pacheco did not embrace the opportunity afforded him to take a timely appeal to the Department of Environmental Protection (DEP) for a de novo review of the commission's action and an adjudicatory hearing to contest the commission's findings and assertion of authority over the locus (see 310 Code Mass. Regs. § 10.05[7][a], [j] [1989]). Nor did he (as he could have, had he requested such DEP action) seek judicial review under G. L. c. 30A, § 14, of any adverse agency determination.[4] Having forgone his opportunity to do so, he is precluded from relitigating his jurisdictional contention. *Stowe* v. *Bologna*, 32 Mass. App. Ct. 612, 615, *S.C.*, 415 Mass. 20 (1993). *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. 348, 352 (1992). See *Angel* v. *Bullington*, 330 U.S. 183, 189 (1947); *Durfee* v. *Duke*, 375 U.S. 106, 112 (1963); *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352-353 (4th Cir. 1998); *Department of Pub. Welfare* v. *Billerica*, 350 Mass. 56, 57 (1966); *Tuper* v. *North Adams Ambulance Servs., Inc.*, 428 Mass. 132, 135 (1998); *Sarin* v. *Ochsner*, 48 Mass. App. Ct. 421, 423-424 (2000); Restatement (Second) of Judgments § 12 comment c & illustration 3 to comment d (1982); 18 Wright, Miller & Cooper,

---

[4]If a local wetlands protection by-law is more stringent than G. L. c. 131, § 40, and the conservation commission operates thereunder, the DEP appears to lack the power to supersede the commission's decision on a notice of intent to do work altering wetlands, and the appropriate avenue of judicial review is not via G. L. c. 30A, § 14, but rather through an action in the nature of certiorari pursuant to G. L. c. 249, § 4. See *Hamilton* v. *Conservation Commn. of Orleans*, 12 Mass. App. Ct. 359, 367-370 (1981). Neither party has raised this issue, however; and in any event it does not affect our analysis or decision, since Pacheco availed himself of neither appellate remedy and since the standards of appellate review are essentially the same in both routes. See *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 17-18 (1979); *FIC Homes of Blackstone, Inc.* v. *Conservation Commn. of Blackstone*, 41 Mass. App. Ct. 681, 684-685 (1996), and cases cited.

Federal Practice and Procedure § 4435 (1981 & Supp. 2000).[5]

We harbor no doubt that Pacheco's jurisdictional argument was no longer viable after his failure to exhaust his administrative and judicial remedies with respect to the commission's first order of conditions. Even had we any, however, the course of subsequent proceedings would remove it. On December 23, 1993, the commission issued an enforcement order informing Pacheco that the 1990 order of conditions had expired, that another on-site inspection revealed that his violation at the locus still existed, and that fines would be imposed daily until he filed a new notice of intent. Pacheco filed such a new notice on January 24, 1994, proposing to do the same work as described in the 1990 notice. A hearing on the new notice was held on February 16, 1994, resulting in the commission's issuance of a new order of conditions on February 24, 1994. That new order contained the same findings and mandates as its 1990 predecessor, but added as reasons for requiring the work "prevention of pollution" and "protection of wildlife habitat" and also imposed a deadline of May 30, 1994, for its completion.

On May 31, 1994, Pacheco, having done nothing in response to the new order, filed a complaint in Superior Court seeking a preliminary injunction to restrain the commission from enforcing its order (and fines) against him. In his "verified complaint" Pacheco did not contest the commission's jurisdiction but

---

[5]These authorities reflect the application to the issue of jurisdiction of settled principles of claim and issue preclusion, formerly called the "doctrine of res judicata[, which] is founded on the necessity for finality in litigation. 'Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.' Considerations of fairness and the requirements of efficient judicial administration dictate that an opposing party in a particular action . . . is entitled to be free from continuing attempts to relitigate the same claim." *Wright Mach. Corp.* v. *Seaman-Andwall Corp.*, 364 Mass. 683, 688 (1974) (citations omitted). As *Tuper*, *Stowe*, and *DeCarolis*, *supra*, indicate, the doctrine has been applied in both its prongs to the decisions of administrative agencies and covers unappealed agency final orders. See Cella, Administrative Law and Practice § 431 (1986 & Supp. 1999). Several of the cited authorities recognize the existence of certain narrow exceptions to the rule against relitigating decided jurisdictional issues — chiefly, if the exercise of jurisdiction constituted a clear usurpation or abuse of power, or if the tribunal asserting jurisdiction lacked the capacity for making an adequately informed determination as to its own jurisdiction — but Pacheco has made no argument in this respect, and we see no evidence in this record that any such exceptions would be applicable.

merely noted his "dispute[]" with the commission's position that the "wet pocket" and the stream channel connected to other wetlands "had visible water and hydraulic soil conditions." The gravamen of the complaint, however, was the allegation that certain special conditions imposed by the commission in its order were inconsistent with the DEP's mandated general conditions and required "prohibitive[ly]" expensive work to complete. After a hearing, injunctive relief was denied Pacheco on June 8, 1994. He took no further steps to prosecute his action, and it was dismissed with prejudice by stipulation in 1995.[6]

Pacheco did not appeal the commission's new order of conditions to the DEP (or, as he could have, proceeded pursuant to G. L. c. 249, § 4, see note 4, *supra*) but simply continued to ignore it. On February 14, 1995, the commission finally issued an enforcement order. On February 21, 1995, Pacheco filed a request with the DEP for a superseding order of conditions — a procedure not authorized by the governing statute or regulations — which was promptly rejected by the DEP. The commission, through town counsel, provided him with yet another locus poenitentiae before becoming subject to enforcement, by letter dated July 27, 1995, but his inaction continued.

On October 17, 1995, the commission's instant enforcement complaint was filed, for injunctive relief to compel Pacheco's long-withheld compliance. On December 8, 1995, the DEP notified Pacheco of its awareness of his continued wetlands violations and his noncompliance with the commission's prior orders and threatened its own enforcement proceeding unless restoration work was completed within four months, observing in passing the commission's statutory and regulatory jurisdiction with respect to the order it sought to enforce. Pacheco failed to respond to the DEP notification or meet the DEP deadline. Nor did he plead "lack of subject matter jurisdiction" in his answer to the commission's complaint or in any motion, instead raising

[6]Although the papers themselves were not made part of the record on appeal, the facts of Pacheco's complaint and the denial of the injunction he sought were explicitly alleged in the commission's verified enforcement complaint, admitted in Pacheco's answer, and referenced by the judge below. We have examined the papers pursuant to our inherent power under Mass. R.A.P. 8(e), 378 Mass. 934 (1979), to insure that the record "conform[s] to the truth." See *Bechtel* v. *Paul Clark, Inc.*, 10 Mass. App. Ct. 685, 697-693 (1980). See also *United States* v. *Aulet*, 618 F.2d 182, 186-187 (2d Cir. 1980) (under Federal counterpart to rule 8[e]).

the issue at the June, 1997, hearing on the commission's summary judgment motion for injunctive enforcement.

Against this procedural background, Pacheco must be precluded from relitigating the jurisdictional issue which he raised, lost, and twice failed to appeal; and which on a third occasion (his injunction suit) he waived by failing to advance it, actually acquiescing in the commission's assertion of jurisdiction over the locus (complaining only of certain conditions imposed) and then dismissing the suit with prejudice. See *Tuite & Sons, Inc.* v. *Shawmut Bank, N.A.*, 43 Mass. App. Ct. 751, 754-755 (1997) (stipulated dismissal with prejudice is an adjudication on the merits and has same res judicata effect).[7]

On this record, the judge was amply justified, when rejecting Pacheco's jurisdictional objection, in declaring "that ship has sailed."[8] Since there was no genuine issue of material fact before the judge regarding either jurisdiction or Pacheco's (conceded) failure to comply with the 1994 order of conditions,

---

[7]Pacheco's reliance on certain dicta by this court in *Rutland* v. *Fife*, 11 Mass. App. Ct. 341 (1981), *S.C.*, 385 Mass. 1010 (1982), and *Bourne* v. *Austin*, 19 Mass. App. Ct. 738 (1985), is entirely misplaced, for those cases do not stand for the proposition asserted — that he is free to raise the jurisdictional issue in this appeal. In those cases the judicial proceedings occurred entirely outside the administrative scheme. In the former case (where this court's ruling that the record did not establish that the locus was a wetland was reversed by the Supreme Judicial Court), the local conservation commission did not decide it had jurisdiction nor issue an order of conditions, so there was nothing for the landowner to appeal; in the latter, the landowner did not submit to the administrative process at all (and the decision turned on whether the word "alter" in G. L. c. 131, § 40, encompassed certain "repairs" to a retaining wall at the base of a seawall, in the course of which the court noted that any "fill" by the landowner would be covered by the Wetlands Protection Act and defined "fill" so as to include precisely the activity undertaken by Pacheco, i.e., the placing of material that alters the elevation of a wetland). In contrast, not only did Pacheco choose to avail himself of the commission's process by filing his notice of intent; he also received a final agency decision that expressly included a jurisdictional determination. At that point, the only manner by which to raise a challenge to the commission's authority was first by the regulatory, then by the statutory, appeals process within the required time periods, which Pacheco twice failed to do. See *supra* at 741-742 & n.4. See also *Department of Pub. Welfare* v. *Billerica*, 350 Mass. at 57; *Board of Appeals of Rockport* v. *DeCarolis*, 32 Mass. App. Ct. at 352; *Stowe* v. *Bologna*, 32 Mass. App. Ct. at 614-615; *Sarin* v. *Ochsner*, 48 Mass. App. Ct. at 423-424.

[8]Although in making this point the judge emphasized what she (erroneously) thought was Pacheco's failure to have raised the issue in prior proceedings, we can affirm her correct summary judgment conclusion on the

the judge correctly ordered summary judgment and injunctive relief for the commission on its complaint for enforcement.

The judgment is affirmed. The commission has requested "just costs and damages" in connection with this appeal. Having prevailed on appeal, the commission "may . . . submit [its] petition for [appellate] fees together with the necessary back-up material and details as to hours spent, precise nature of the work, and fees requested," within fifteen days of the issuance of the rescript in this case. *Eldim, Inc.* v. *Mullen*, 47 Mass. App. Ct. 125, 131 (1999), quoting from *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 19 (1989). Pacheco shall have fifteen days to respond to the commission's petition.

*So ordered.*

---

undisputed material facts in this record for the reasons set forth in this opinion. See *West Broadway Task Force* v. *Boston Hous. Authy.*, 414 Mass. 394, 397-398 (1993); *Richardson* v. *Liberty Mut. Fire Ins. Co.*, 47 Mass. App. Ct. 698, 703 n.10 (1999). Even were we to view the entire saga of the commission's striving to make Pacheco comply with the wetlands protection laws as continuing proceedings in a single case — an issue Pacheco does not mention but which we address to forestall another dilatory maneuver on his part — the judge's refusal to consider his effort to reopen the jurisdictional question could be affirmed as well within her discretion under the "law of the case" doctrine. See *Peterson* v. *Hopson*, 306 Mass. 597, 599 (1940); *King* v. *Driscoll*, 424 Mass. 1, 7-8 (1996). See also *Free* v. *Abbott Labs., Inc.*, 164 F.3d 270, 272-273 (5th Cir. 1999).