Connolly, J.
This is an action in the nature of certiorari pursuant to G.L.c. 249, §4, where the plaintiffs, Geoffrey and Brooke Hargreaves-Heald, seek to annul and reverse a decision made by Lincoln Conservation Commission (Commission) denying the plaintiffs approval for a wetland crossing in conjunction with a planned development on the plaintiffs’ properly. The matter is before the court on the plaintiffs’ motion for judgment on the pleadings as to count one of the complaint, alleging that the Commission’s decision was erroneous as a matter of law and lacked substantial evidence. For the reasons set forth below, the plaintiffs’ motion is denied.
BACKGROUND
The plaintiffs own property located at 24 Sandy Pond Road in Lincoln. In December of 1998 in accordance with the Wetlands Act, G.L.c. 131, §40 (“Act”), and Article XVIII of the Town of Lincoln By-Laws (“Bylaw”) the plaintiffs filed a Notice of Intent (“NOI”) with the Defendant Lincoln Conservation Commission (“Commission”). The plaintiffs proposed to construct a nine-foot wide driveway from Sandy Pond Road to the proposed site of a second residence on the property. The NOI acknowledged the presence of an intermittent stream and surrounding wetland vegetation in the path of the driveway, and outlined a detailed plan to mitigate the anticipated impact on wetland areas. After several public hearings and consideration of additional submissions on behalf of the plaintiffs on March 3, 1999 the Commission voted unanimously to deny the plaintiffs’ application.[1] The Commission based its denial on the Act as well as the wetlands protection provisions of the Town of Lincoln Bylaws (“Bylaw”). Under the authority of the Bylaw, the grounds for the Commission’s decision included the following findings:
1. The Applicant presented no information to overcome the presumption that the work in the resource area and the 50-foot buffer zone will have a significant adverse effect on the wetland values protected by the Bylaw.
2. Absent evidence to overcome the presumption, the Commission must apply the presumption. The wetland and stream identified in the NOI receive overland drainage from Sandy Pond Road and adjacent lands, and its plants and soils filter and detain sediments, nutrients and toxic substances found in surface water runoff. The wetland contributes to base flow during dry periods and attenuates storm water runoff into an adjacent stream. The wetland and stream support a variety of wildlife.
3. There is no reference in the Bylaw that a proposed wetland replication would overcome the presumption of significant adverse impact. While the proposed replicated wetland is adjacent to the wetland proposed for filling, it will not provide the same functions.
4. The 50-foot buffer zone proposed to be eliminated provides critical protection and enhancement of wetlands values. The filled buffer zone will reduce the wetland’s effectiveness in protecting public and private water supplies and eliminate its ability to enhance wildlife habitat values of the adjacent wetland.
5. The intent of the Bylaw is to protect resource areas and buffer zones from the immediate and cumulative impacts of projects which might alter wetlands. While the applicant proposes to fill a relatively “small” area of wetlands, the Commission must look at the potential impacts on the entire wetland system. The filling of more than 300 square feet of wetland would result in a significant adverse impact on the wetland system and therefore is denied under the Town’s Wetland Protection Bylaw.
DISCUSSION
Pursuant to G.L.c. 249, §4, the Court has jurisdiction to review, in the nature of certiorari, decisions of local conservation commissions made under a wetland bylaw. F.I.C. Homes of Blackstone v. Conservation Commission, 41 Mass.App.Ct. 681, 684 (1996). Judi *799 cial review under G.L.c. 249, §4 is limited to correcting substantial errors of law apparent on the record adversely affecting material rights. Carney v. City of Springfield, 403 Mass. 604, 605 (1995), quoting Murray v. Second District Court of E. Middlesex, 389 Mass. 508, 511 (1983). The standard of review varies according to the nature of the action for which review is sought. F.I.C. Homes of Blackstone Inc., 41 Mass.App.Ct. at 684, quoting Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 217 (1989). In reviewing the Commission’s decision, the first issue is the standard of review applicable to the plaintiffs complaint for relief under G.L.c. 249, §4. T.D.J. Development Corp. v. Conservation Commission of North Andover, 36 Mass.App.Ct. 124, 128, review denied, 418 Mass. 1103 (1994).
When considering the grant or denial of an order of conditions, the commission’s conclusions shall be fully supported by substantial evidence in the record. Lovequist v. Conservation of Dennis, 379 Mass. 7, 17 (1979). “Past cases have amply demonstrated the necessity that local planning authorities base their decisions on reasoning relevant to the evidence presented before them.” Id. Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support conclusion.” Boston Edison Co. v. Board of Selectmen of Concord, 355 Mass. 79, 92 (1968). “The court should be slow to decide that a public board has acted unreasonably or arbitrarily. The court should cast about to discover, if possible, some ground which reasonable men might deem proper on which the action can rest.” Dubuque v. Conservation Commission of Barnstable, 58 Mass.App.Ct. 824, 829, n.9 (2003) quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952).
Where the action sought to be reviewed is the proper exercise of the commission’s discretion in the impositions of conditions for the protection of wetlands, an arbitrary and capricious standard should be applied. T.D.J. Development Corp., 36 Mass.App. at 128, citing Forsyth School, 404 Mass. at 217 and n.2. “A decision is not arbitrary and capricious unless there is no ground which ‘reasonable men might deem proper to support it.’ ” T.D.J. Dev. Corp., 36 Mass.App.Ct. at 128, quoting Cotter v. Chelsea, 329 Mass. 314, 318 (1952). Further, basic rules of appellate review mandate that “if the agency has, in discretionary exercise of its expertise, made a ‘choice between two fairly conflicting views,’ and its selection reflects reasonable evidence, ‘[a] court may not displace [the agency’s] choice.’ ” Conservation Commission of Falmouth, 49 Mass.App.Ct. 737, 741, n.3 (2000), quoting Lisbon v. Contributory Retirement Appeal Bd., 41 Mass.App.Ct. 246, 257 (1996). However, if a Commission “has acted for reasons that are extraneous to the prescription of the regulatory scheme, but are related, rather, to an ad hoc agenda, then that agency has acted arbitrarily because the basis for action is not uniform, and, it follows, is not predictable.” Fafard v. Conservation Commission of Reading, 41 Mass.App.Ct. 567-68 (1996).
Section 8 of the Bylaw, in part, defines a resource area as any freshwater wetland, marsh, wet meadow, bog or stream and the land beneath. A buffer zone is defined as any land within 100 feet from the edge of any freshwater wetland, marsh, wet meadow, etc. Section 11 of the Bylaw provides that the applicant shall have the burden of proving by a preponderance of the evidence that the work proposed will not have significant adverse effect, immediate or cumulative, upon the wetland values protected by the Bylaw. Section 2 of the Bylaw further states that any alteration within 50 feet of a resource area or other area defined in that section gives rise to a presumption of significant adverse effect on the wetland values protected by the Bylaw. Section 11 states that failure to provide adequate evidence to the Commission supporting these burdens shall be sufficient cause for the Commission to deny a permit, or impose conditions thereon.
The record indicates that the proposal involves the construction of a nine-foot wide paved driveway which would cross an existing resource area. This crossing would necessitate eliminating 15 feet of stream bank and 30 square feet of stream, altering approximately 400 square feet of bordering vegetated wetlands, and other alterations of lesser impact. The plaintiffs submitted a detailed plan to replicate the filled wetlands in an adjacent area at a 1.5:1 ratio. Other measures proposed by plaintiffs to mitigate the loss of functional wetland include placing a culvert under the driveway for drainage purposes, and a berm at the driveway’s end to prevent the unchecked flow of road salt and pollutants down the driveway into the protected area. After considering the threat posed to the resource area and the feasibility of plaintiffs’ proposals to replicate existing elements of the resource area, the Commission found that the presumption of adverse effect had not been overcome.
The plaintiffs do not contest that the presumption properly applies, but rather that their replication plan would adequately replace and even exceed the existing functional value of the existing resource area and buffer zone. The record indicates that the Commission relied upon substantial evidence in reaching its conclusion. Minutes from Commission meetings recite its concerns including the future effectiveness of an altered resource area. Altering the resource area will undoubtedly affect its ability to perform drainage functions and to filter nutrients and toxic substances found in surface water runoff. Crossing the existing stream with a paved driveway will facilitate the flow of pollutants into the resource area, even with some measures taken to mitigate this harm. This is of particular importance due to the unfiltered nature of Lincoln’s drinking water supply and the fact that the *800 Cambridge reservoir is located downstream of the resource area.
In short, the Commission determined that the proposed wetland replication, though adjacent to the wetland proposed for filling, would not provide the same function as the existing wetland. A recent study addressing dozens of other replication projects across Massachusetts illustrates problems inherent to wetlands replication, and the Commission was entitled to take notice of this information. See, e.g., Stephen Brown & Peter Veneman, Compensatory Wetland Mitigation in Massachusetts at 38-41. The Town Bylaw neither prohibits nor approves the use of wetland replication to minimize the impact of a proposed project. Though the plaintiffs put forth many facts suggesting that the proposed solution will adequately sustain the functions of the existing wetlands, the Commission’s determination on this issue is a reasonable one in light of the conflicting evidence it considered. Where an agency “in the discretionary exercise of its expertise, has made a choice between two fairly conflicting views, and its selection reflects reasonable evidence, a court may not displace the agency’s choice.” Conservation Commission of Falmouth v. Pacheco, 49 Mass.App.Ct. 737, 739 n.3 (2000).
The record indicates that numerous items of correspondence regarding the proposed project were sent to the Commission, including letters from nearby residents and other Town officials opposing the project. The fact that the Commission received such testimony is not proof that its decision was ad hoc or based upon extraneous considerations beyond the scope of its authority. Under Section 2 of the Bylaw, the burden of proof lies with the applicant to overcome the presumption that its work will not have a significant adverse effect on the wetland values protected therein. Art. XVIII, Sec. 2. The Commission applied the Bylaw to the plaintiffs proposal based on its own expertise with wetlands protection and relevant research on these issues. Although the plaintiffs have presented evidence that other stakeholders in the community are opposed to the project on other grounds, the record shows that the Commission’s decision was reasonably related to the preservation and protection of the interests protected by the Bylaw, and cannot therefore be considered arbitrary or capricious. T.D.J. Development Corp., 36 Mass.App.Ct. at 129.
The plaintiffs assert that the Commission’s denial is improperly based on a prospective determination that the proposed wetland replication area will be insufficient to replace the functions of the current resource area. They cite the Farfard decision which held that prospective violations of a town bylaw are not a legally tenable ground for denial of a submission, that on its face complies with applicable law. Farfard v. Conservation Commission of Reading, 41 Mass.App.Ct. 565, 571 (1996) (emphasis added). In that case, the Reading Conservation Commission sought to bar activity occurring outside a prescribed wetland area, on the theory that such activity might in the future impact the resource area itself. Farfard, 41 Mass.App. at 569. In this case the proposed project on its face involves filling a substantial portion of an existing wetland, which the Commission found would immediately impact the wetland’s ability to perform the drainage, filtration and wildlife support functions sought to be protected by the Bylaw. In finding that an immediate impact would occur in the areas protected under the Bylaw, the Commission did not act arbitrarily, but rather applied the provisions of the Bylaw in a reasonable manner.
In accordance with the Bylaw, the Commission adequately considered the hardship on plaintiffs in denying the application. Section 7 of the Bylaw requires that “due consideration shall be given to any demonstrated hardship on the applicant by reason of denial, as presented at the public hearing.” Art. XVIII, Sec. 7. The record indicates that prior to the Commission’s denial, the Lincoln Planning Board had denied to the plaintiffs the necessary permits to subdivide their lot. In reaching their decision, the Commission determined that in the absence of the requisite permits, there was no justification to allow a roadway through a wetland area. In this manner, the Commission properly weighed the uncertain hardship on the plaintiffs along with the impact of the project on wetland values protected by the Bylaw.
As this action under G.L. 249, §4 is confined to the administrative record, the plaintiffs alternative claim that the Superseding Order issued by DEP controls is not properly before the Court. The plaintiffs’ appeal to DEP was filed after issuance of the Commission’s decision and thus is not part of the administrative record. Despite this procedural obstacle, the substance of plaintiffs’ claim is without merit. The Plaintiffs argue that the Town Bylaw should be deemed no more stringent than the Act, and thus the DEP SOC approving the project with conditions should control. They cite DeGrace v. Conservation Commission of Harwich, 31 Mass.App.Ct. 132 (1991) (holding that the DEP retains final authority under the Wetlands Act where a denial is based on a local bylaw or ordinance that is no more stringent than the Act). It is settled law that local commissions may enact more stringent requirements and enforce them on that basis. Golden v. Selectmen of Falmouth, 358 Mass. 519, 526 (1970). See, e.g., T.D.J. Development Corp., 36 Mass.App. at 126. The Lincoln Bylaw distinguishes itself from the Act in several ways. Most notably, Section 2 of the Lincoln Bylaw regulates all activity within the buffer zone, while the Act only regulates activity if it will “alter” a wetland resource area. 310 Code Mass.Regs. Sec. 10.02(2)(b) (1989). Thus, as with other bylaws similarly interpreted by the courts, this facet of the Town Bylaw provides greater protection to wetland resource areas and the Commission is entitled to deny *801 the proposal of its authority despite the DEP’s issuance of a Superseding Order. T.D.J. Development Corp., 36 Mass.App. at 126 (1994) (finding that local bylaw that regulates all activity in a wetland buffer zone provides greater protection than State Wetlands Act.); F.I.C. Homes of Blackstone v. Conservation Commission, 41 Mass.App. at 687.
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for Judgment on the Pleadings be DENIED.

Plaintiffs appealed the portion of the Commission’s action premised on the Act by filing a request for a Superseding Order of Conditions (“SOC”) from the State Department of Environmental Protection (“DEP”) on March 16, 1999. On May 31, 1999, the DEP issued a SOC under the Act approving the plaintiffs’ project with conditions. Plaintiffs filed this court action to appeal the Commission’s decision made under authority of the Town Bylaw.