CHARLES RODGERS & another[1] *vs.* CONSERVATION COMMIS-
SION OF BARNSTABLE & another.[2]

No. 05-P-778.

Barnstable. April 12, 2006. - August 24, 2006.

Present: GREENBERG, DUFFLY, & & KAFKER, JJ.

Further appellate review granted, 447 Mass. 1111 (2006).

*Administrative Law,* Judicial review, Substantial evidence. *Practice, Civil,*
Relief in the nature of certiorari. *Wetlands Protection Act. Municipal
Corporations,* By-laws and ordinances, Conservation commission,
Shellfish.

The decision of a local conservation commission (commission), declining to
issue an order of conditions authorizing the plaintiffs' construction of a
proposed pier, could not be preempted by a superseding order of the
Department of Environmental Protection, where the commission's decision
was based, at least in part, on its determination that the proposed pier
would violate a local by-law that regulated the protection of recreational
pursuits more austerely than the State statute and related regulations
[204-205]; further, where the commission's detailed and specific findings
that the construction of the proposed pier would have an adverse impact on
the interests protected under the by-law were based on substantial evidence
and not arbitrary, the commission did not err in denying the plaintiffs'
request for an order of conditions to build the pier [205-208].

CIVIL ACTION commenced in the Superior Court Department on
April 11, 2003.

The case was heard by *Richard F. Connon,* J., on a motion
for judgment on the pleadings.

*T. David Houghton,* Assistant Town Attorney, for the
defendants.

*Robert S. Troy* for the plaintiffs.

GREENBERG, J. The conservation commission of Barnstable
(commission), on the ground that the plaintiffs' proposed
permanent pier interfered with recreational shellfishing, declined

[1]Francene Rodgers.
[2]Town of Barnstable.

to issue an order of conditions authorizing its construction. The commission's decision was based on G. L. c. 131, § 40, the State Wetlands Protection Act, and art. 27 of the Barnstable Wetlands Protection By-law (by-law). On review in the nature of certiorari (G. L. c. 249, § 4), a judge of the Superior Court concluded that the commission's decision was not supported by substantial evidence and annulled it. We think the commission acted lawfully and reverse the judgment.

1. *Background.* The plaintiffs, Charles and Francene Rodgers (plaintiffs), own a house at 621 Old Post Road in Cotuit, situated on a 2.7 acre lot with 200 feet of frontage on Cotuit Bay. They filed a notice of intent with the commission on September 19, 2002, for the construction of a pier 121 feet long to be built in three sections, with an attached ramp, and an eight foot by ten foot float extending into the bay. That submission was made in conformity with G. L. c. 131, § 40, and art. 27 of the by-law. The proposed pier was to be constructed at or near a "Shellfish Relay Area,"[3] so designated by the town's shellfish biologist and deputy shellfish constable and the director of the Massachusetts Division of Marine Fisheries. The area was designated a "4" zone in terms of shellfish productivity (out of a scale of 1 to 10).[4]

During the course of the proceedings before the commission, the plaintiffs modified the design of the pier. They redesigned the pier so that its elevation would be about two and one-half feet higher (eight and one-half feet above the mean low water level), and the over-all length of the pier was shortened by twelve feet. There was considerable resistance to the project from area residents and shellfishermen, many of whom signed a petition in opposition. Those who opposed the pier were

[3]The town's shellfish biologist and deputy shellfish constable explained that "[s]hellfish [r]elay [a]reas are designated as such based primarily on the fact that they are suitable habitats for the long term survival and growth of selected transplanted shellfish."

[4]During the hearing, the commission's chairperson read into the record a letter from the town's shellfish biologist and deputy shellfish constable reporting the results of a shellfish survey performed at the site of the proposed pier. These results were similar to another survey commissioned by the plaintiffs. Both surveys indicated that there were relatively low numbers of shellfish at the site.

concerned that it would significantly impede the recreational use of the coastline, including sailing and shellfishing.

At the December 10, 2002, hearing, there was protracted testimony from several objecting parties concerning "prop dredging problems" caused by the construction of a pier. According to the testimony, prop dredging creates large holes in the ocean floor around the pier. One shellfisherman opined that the holes would be so deep that "if you've got waders on and you hit one of those holes, you're not coming back up." One of the commissioners expressed his concern that prop dredging stirs up the fine sediments of the ocean substrata, which might hamper the growth and development of different kinds of fish and shellfish.

The commission found that although the shellfish surveys submitted in evidence indicated low numbers of shellfish at the site of the proposed pier, those survey results were "an ineffective measure of the productivity and importance of the shellfishery" because "[t]he shellfishing at the locus is subjected to periodic commercial and recreational harvesting." The commission also recognized that the site has historically been "important in providing quahogs for the [t]own's recreational and commercial harvests."

The commission made the following additional findings:

> "6. The site is found significant under [G. L. c. 131, § 40,] to the interest of protection of land containing shellfish, and significant under Article 27 of the Town of Barnstable General Ordinances to the interests of shellfish and recreation.
>
> "7. The Commission took testimony and correspondence from recreational shellfishermen who cited likely adverse impacts to the shellfishery should the project ensue.
>
> "8. The Director of the MA Division of Marine Fisheries stated that the locus' 'use as a shellfish propagation area will be compromised if the construction of a pier with its attendant use by boats is permitted.'
>
> "9. Article 27 of the Town of Barnstable General Ordinances regulates recreation, which it defines to include shellfishing.

"10. Based on the testimony provided, the Commission finds it more likely than not that the proposed pier will inhibit and impede access to the shellfishery by recreational shellfishermen.

"11. Inhibiting and impeding access is found to pose a significant adverse impact to the recreation interest as protected by Article 27.

"12. The locus is but one of approximately 8 parcels which are located along the northerly shore of the Shellfish Relay Area. None of the eight has a pier. The Commission finds the project will have a significant cumulative effect upon recreation and shellfish as regulated under Article 27, as it will lead to the likelihood of additional piers constructed within the Relay Area."

On February 4, 2003, the commission denied approval of the proposed pier under G. L. c. 131, § 40, "in the interest of protection of land containing shellfish, and under [art. 27] in the interest of shellfish[ing] and recreation." The plaintiffs appealed the commission's decision to the Department of Environmental Protection (DEP) pursuant to G. L. c. 131, § 40, which issued a superseding order of conditions (superseding order) on November 17, 2003, permitting the project. The commission filed an appeal from that order with the DEP, requesting an adjudicatory hearing.[5] The plaintiffs also filed this action in the Superior Court, seeking, inter alia, relief in the nature of certiorari. In ruling on the plaintiffs' motion for judgment on the pleadings, the judge found that the commission's decision was preempted by the DEP's superseding order and unsupported by substantial evidence, "annulled" the commission's decision, and ordered entry of judgment for the plaintiffs. Only the appeal by the town and the commission from the Superior Court judgment is before us.

2. *Standard of review.* When considering a case in the nature of certiorari, "the standard of review may vary according to the nature of the action for which review is sought." *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry*, 404

---

[5]We were informed during oral argument that those proceedings have been stayed.

Mass. 211, 217 (1989). See *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 128 (1994). "In order to overturn [an agency's decision], the applicants must establish that it was arbitrary and capricious or unsupported by substantial evidence. See *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 18 (1979); *FIC Homes of Blackstone, Inc.* v. *Conservation Commn. of Blackstone*, 41 Mass. App. Ct. [681,] 684-685 & n.4 [1996]." *Dubuque* v. *Conservation Commn. of Barnstable*, 58 Mass. App. Ct. 824, 828-829 (2003). "If the agency has, in the discretionary exercise of its expertise, made a choice between two fairly conflicting views, and its selection reflects reasonable evidence, a court may not displace [the agency's] choice." *Conservation Commn. of Falmouth* v. *Pacheco*, 49 Mass. App. Ct. 737, 739-740 n.3 (2000) (citations omitted).

3. *The Barnstable by-law.* It is settled that the town, under its by-law, could set wetland protection standards that were more demanding than those set forth in the statutory scheme. *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. at 15. *DeGrace* v. *Conservation Commn. of Harwich*, 31 Mass. App. Ct. 132, 135-136 (1991). *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. at 125-126.

The town's by-law includes a wetlands protection provision in art. 27. Section 1 of art. 27 sets out the purpose of the by-law, which includes protection of shellfish and recreation. Section 6 of art. 27 empowers the commission "to deny a permit . . . for failure to avoid or prevent unacceptable significant or cumulative effects upon the wetlands values protected by this by-law [and] where it is deemed that the denial is necessary to preserve the environmental quality of resource areas." Article 27 does not define shellfish, thus adopting the definition of shellfish included in 310 Code Mass. Regs. § 10.34 (1997),[6] but does define recreation in § 14 as:

"Any leisure activity or sport taking place in, on, or within

---

[6]Title 310 Code Mass. Regs. § 10.34(2) defines shellfish by listing specific species: "Bay scallop . . . ; Blue mussel . . . ; Ocean quahog . . . ; Oyster . . . ; Quahog . . . ; Razor clam . . . ; Sea clam . . . ; Sea scallop . . . ; Soft shell clam . . . ."

> 100 feet of a resource area which is dependent on the resource area and its values directly or indirectly for its conduct and enjoyment. Recreational activities include, but are not limited to, the following: noncommercial fishing and shellfishing, hunting, boating, swimming, walking, painting, birdwatching and aesthetic enjoyment. Structures and activities in or within 100 feet of a resource area shall not have a significant effect on public recreational values
> . . . ."

In contrast, the Code of Massachusetts Regulations refers to recreation only as an aspect to be taken into account by a conservation commission or DEP in deciding whether land can be considered significant to the protection of land containing shellfish. See 310 Code Mass. Regs. § 10.34(3) (1997). Thus, even though the by-law does not provide more stringent protection of shellfish than the State statute and related regulations,[7] it does regulate the protection of recreational pursuits more austerely. See *Hobbs Brook Farm Property Co. Ltd. Partnership v. Conservation Commn. of Lincoln*, 65 Mass. App. Ct. 142, 149-150 (2005) (a town by-law identified protected values and requirements that were not specifically contained in either the relevant State statute or the related regulations; the town by-law was thus "more stringent than the act and related regulations"). Since the commission's decision is based at least in part on its determination that the proposed pier would inhibit recreation under art. 27, it cannot be preempted by the DEP's superseding order. See *FIC Homes of Blackstone, Inc. v. Conservation Commn. of Blackstone*, 41 Mass. App. Ct. at 687.

4. *Commission's findings.* An agency's finding "must be set aside if 'the evidence points to no felt or appreciable probability of the conclusion or points to an overwhelming probability of the contrary.' " *New Boston Garden Corp. v. Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting from *Boston Edison Co. v. Selectmen of Concord*, 355 Mass. 79, 92 (1968). A finding is based upon substantial evidence if "experience

---

[7]See *DeGrace v. Conservation Commn. of Harwich*, 31 Mass. App. Ct. at 136 (holding that a town's by-law that "specifically adopts and incorporates by reference the definition section" of the State statute is not more stringent than the State statute in that respect).

permits the reasoning mind to make the finding; [i.e.,] whether the finding *could* have been made by reference to the logic of experience" (emphasis in original). *Ibid.* "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966), quoting from *Universal Camera Corp.* v. *National Labor Relations Bd.*, 340 U.S. 474, 488 (1951).

Here, the commission's findings regarding recreation were based on substantial evidence. The commission took into account the redesigned pier, the testimony and correspondence from area shellfishermen, and the testimony and reports of experts. Although the plaintiffs might be correct that there are few shellfish at the locus, area residents were clearly concerned about interference with their recreational pursuits. The definition of recreation in art. 27 does not require that recreational shellfishing be productive or successful. Additionally, the locus was part of, or close to, a shellfish relay area that had received contaminated shellfish in the past for rehabilitation. The commission considered this as a factor in protecting the recreational shellfishing interest in the area. The commission also noted during the hearing that it was "rare that we get such numbers of individuals willing to come out for public comment to oppose a particular application." The definition of recreation in art. 27 provides the commission with some flexibility in balancing recreational interests. A rational mind could logically infer from the number and strength of the opposing parties that many area residents and recreational shellfishermen had an avid and active interest in the area that would be adversely affected by the pier. See, e.g., *Titcomb* v. *Board of Appeals of Sandwich*, 64 Mass. App. Ct. 725, 731-732 (2005) (where the spirit of the by-law was permissive, the zoning board's decision to allow a nonconforming use could be upheld). See also *Dubuque* v. *Conservation Commn. of Barnstable*, 58 Mass. App. Ct. at 828 (noting that the commission is permitted to balance the interests of the public with the interest of the individual applicant).

The plaintiffs argue that the commission's finding "that the project will have a significant cumulative impact upon shellfishing as regulated under Article 27" establishes that the commis-

sion had an ad hoc agenda to oppose the construction of all piers in the area. "If the agency has acted for reasons that are extraneous to the prescriptions of the regulatory scheme, but are related, rather, to an ad hoc agenda, then that agency has acted arbitrarily because the basis for action is not uniform, and, it follows, is not predictable." *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. 565, 568 (1996). We need only to refer to the town's Guidelines for New Private Piers (guidelines) to determine that the commission's decision is not arbitrary. The guidelines provide that, in applying art. 27, the commission should consider "the number, spacing, and lengths of adjacent piers," and further gives the commission the ability to resolve conflicting interests by determining "the most significant interest in the location concerned." Article 27 itself provides in § 6 that the commission may consider the cumulative effects of a project upon wetland values protected by the by-law.

As previously noted, the Superior Court judge disagreed with the commission's findings and conclusions. With respect to the recreational use of the locus, he concluded that the pier "would have no impact on recreation, navigation or boating" and that the commission's findings "in large part are not reflective of what the evidence was before the [c]ommission." Specifically, the judge took issue with finding 7 because it was based on comments that were "non-specific to the area" and anecdotal; finding 10 because shellfishermen would not be impeded by the redesigned pier; comments of the commissioners during the hearing that indicated some uncertainty whether the site of the proposed pier was a shellfish relay area; and finding 12 because he felt it was "not based upon any evidence in the record since there are no piers in the area."[8]

These points, even if correctly criticized by the judge, were relatively obscure in comparison to the commission's detailed and specific findings that the proposed construction would have an adverse impact on the interests protected under the by-law. On this record, we cannot say that the commission's decision was unsupported by substantial evidence or arbitrary. Ordinarily,

---

[8]We note that the trial judge concluded that the commission's denial of the plaintiffs' request for an order of conditions was "unsupported by substantial evidence, is arbitrary and an abuse of discretion."

judicial review of an agency decision takes place, as here, on the basis of an administrative record. The commission was faced with a proposal that affected the interests of many shellfishermen. One could debate the rightness or wrongness of the commission's balancing of the interests involved, but in the case of administrative agency adjudication, we give substantial deference to the agency's findings of fact and interpretation of its regulations. *Conservation Commn. of Falmouth* v. *Pacheco,* 49 Mass. App. Ct. at 739 n.3. We conclude that the commission did not err in denying the plaintiffs' request for an order of conditions to build their pier.

The judgment is reversed, and a new judgment is to enter upholding the decision of the commission.

*So ordered.*