KATHERINE F. CONROY *vs.* CONSERVATION COMMISSION OF
LEXINGTON & another.[1]

No. 07-P-920.

Middlesex. April 10, 2008. - January 20, 2009.

Present: PERRETTA, MILLS, & RUBIN, JJ.

*Municipal Corporations,* Conservation commission, By-laws and ordinances. *Real Property,* Conservation restriction. *Wetlands Protection Act. Practice, Civil,* Action in nature of certiorari. *Administrative Law,* Substantial evidence, Agency's interpretation of statute, Rulemaking.

In denying the plaintiff a permit to construct a single-family house on an undeveloped lot, the defendant conservation commission erred in imposing on the plaintiff, with regard to the issue whether the construction would cause significant harm to the interests that a local wetlands protection by-law sought to protect, a higher burden of proof than established in the by-law, and therefore, this court remanded the matter to the conservation commission for application of the appropriate burden of proof. [558-563]

CIVIL ACTIONS commenced in the Superior Court Department on May 6, 2003, and October 5, 2005, respectively.

After consolidation, a motion for judgment on the pleadings was heard by *S. Jane Haggerty,* J., and a partial motion to dismiss was also heard by her.

*Patricia L. Davidson* for the plaintiff.

*George A. Hall, Jr.,* for Conservation Commission of Lexington.

RUBIN, J. This case arises from the denial of a permit to Katherine Conroy (plaintiff) by the defendant conservation commission (commission) of the town of Lexington (town) under the town's general by-law for wetland protection (by-law) and the rules adopted thereunder by the commission (rules).

I.

The plaintiff sought to construct a single-family house on a

_____

[1]Town of Lexington.

17,700 square foot undeveloped lot in Lexington. The lot is bisected by a stream which the Department of Environmental Protection (DEP) has classified as an intermittent stream, and a protected resource under the Wetlands Protection Act, G. L. c. 131, § 40 (Act). In the proceeding below, the commission also determined that it is an intermittent "stream" as defined in the by-law.[2]

The by-law is stricter in some respects than the Act. See *Fafard* v. *Conservation Commn. of Reading,* 41 Mass. App. Ct. 565, 568 (1996). The by-law specifies the interests that it seeks to protect (by-law interests).[3] It includes within its definition of protected areas a buffer zone that includes those areas within "[o]ne hundred feet horizontally lateral from the edge of any bank . . . [or] stream . . . ." By-law § 130-8(C)(4)(a). For construction upon or alteration of such protected areas, the by-law requires a permit issued by the commission. See by-law § 130-2. To obtain a permit, one must file a notice of intent (NOI). The by-law then provides that:

> "[t]he applicant shall have the burden of proving by a preponderance of the credible evidence that the work proposed [in the NOI] will not cause significant individual or cumulative harmful effects to the interest sought to be protected by this by-law. In assessing cumulative harmful effects, the Commission may consider the likely long-term effects of the proposed work as well as the likely effects of the proposed work when taken in conjunction with any prior work and any contemplated future work in the affected area. Failure to provide to the . . . Commission

---

[2]The plaintiff insists in her brief that the stream is, in fact, a man-made drainage ditch, notwithstanding the determinations that it is a stream. She ultimately concedes, however, that the commission does have jurisdiction over the property under the by-law because of the presence of the stream.

[3]"The purpose of this by-law is to preserve and protect the wetland resource areas and buffer zones of the Town of Lexington by regulation of, and control of, activities deemed by the . . . Commission to have significant or cumulatively detrimental effect upon the following interests and values, including but not limited to: public or private water supply; ground water supply; the prevention and control of flooding, erosion or sedimentation, storm damage, other water damage and/or pollution; the protection of surrounding land and other homes or buildings, aquatic life or wildlife, streams, ponds or other bodies of water, and recreation." By-law § 130-1.

adequate evidence for it to determine that the proposed work will not cause significant harm to the interest sought to be protected by this by-law shall be sufficient cause for the . . . Commission to deny such permit or to grant such permit with such conditions as it deems reasonably necessary or desirable to carry out the purposes of this by-law or to postpone or continue the hearing to another date certain to enable the applicant and others to present additional evidence, upon such terms and conditions as seems to the Commission to be just."

By-law § 130-7.

The by-law grants the commission authority to promulgate "rules and regulations to effectuate the purposes of this by-law." By-law § 130-6. Pursuant to that authority, the commission has promulgated regulations which are denominated rules. The rules provide that new construction of residential buildings be set back by buffer zones of fifty to one hundred feet, see rules § 5(5)(A)(3), and that, "[o]f contiguous land within the 100-foot buffer zone, construction activities can disturb no more than 50% or the amount not presently supporting a natural community, whichever is greater." Rules § 5(5)(C)(1).

Although the language in § 5 of the rules appears to impose a flat ban on the residential building and construction activities it describes, the section also includes a "commentary" that, we were informed at argument, was promulgated along with the substantive regulation. It states, "Past experience has shown that construction within these buffer zones is very likely to cause significant harm to the interests sought to be protected by the [by-law]. The . . . Commission will therefore not approve any smaller buffer zone unless it is persuaded by clear and convincing evidence that the smaller buffer zone will secure the protection of those interests." Rules § 5(5) commentary.

II.

The plaintiff filed her first NOI under both the Act, which also contains an NOI process, and the by-law, in 2001. In 2003, after a hearing, the commission issued an order of conditions denying the project under both the Act and the by-law. The plaintiff appealed to the DEP as to the commission's conclusion

under the Act, and filed a separate appeal under G. L. c. 249, § 4, the certiorari statute, to the Superior Court, as to the commission's conclusion under the by-law. While the matter was pending before the DEP, the plaintiff revised the proposed project. In May, 2004, based on that change, the DEP issued a superseding order of conditions approving the project with conditions under the Act.

In January, 2005, having received this DEP approval, the plaintiff filed a second NOI with the commission based on the new plan, solely under the by-law. The plan proposed construction of a residential building within the fifty-foot buffer zone; the construction would also, the commission found, disturb over fifty percent of the contiguous buffer zone.

The plaintiff submitted to the commission, among other things, a letter from a wetland ecologist stating that under the plaintiff's proposed project, "the functions of the Bank and stream will be maintained by . . . buffer enhancements proposed along the stream corridor." According to the "Drainage Summary," submitted with the NOI, "[t]he project drainage design has been approved by the Lexington Town Engineer . . . , and will result in a slight decrease in the peak rate of runoff from the site versus existing conditions." The plaintiff also submitted a letter by an engineer concerning runoff. The plaintiff asserted that the proposed buffer enhancement plan would actually "improve[] . . . wetland/watercourse and buffer functions." She argued, among other things, that the construction would cause no change to the stream or its banks; that planting along the banks would improve protection of the buffer, contributing to the stability of the area and improving its value as a wildlife habitat; that "permeable fill" in the construction would reduce runoff; and that her proposed construction would promote rather than harm by-law interests.

The commission held a public hearing on the NOI over two days. After the first day, the wetland ecologist submitted an additional letter. Both he and the plaintiff's engineer testified. Abutters also testified regarding their concerns about flooding from the project and future maintenance.

The commission voted to deny the second application. It found that the land abutting the stream is a "bank" subject to protection under the by-law, and concluded that the project was

not in compliance with the rules for two reasons. First, the home would be constructed closer than the fifty-foot setback, as close as twenty-five feet from the bank. Second, the construction site development and landscaping activities would disturb more than fifty percent of contiguous land within the 100-foot buffer zone. The commission found that within the contiguous buffer zone on the western side of the bank, "construction activities will disturb approximately 78.8 percent of the total area of the contiguous buffer zone presently supporting a natural community."[4]

The commission quoted both § 130-7 of the by-law, referring to "a preponderance of the credible evidence," and the commentary to § 5(5) of the rules, referring to persuasion by "clear and convincing evidence," as well as the language from the rules about the commission's past experience with construction within the buffer zones, before concluding that "[t]he Commission has not been persuaded by clear and convincing evidence that a smaller than 50 foot buffer zone between the bank and the dwelling and a greater than 50 percent disturbance of the contiguous buffer zone on the west side of the bank will not cause significant individual or cumulative harmful effects to the interests sought to be protected by the [by-law]."[5] In one of its findings it explained:

---

[4]The plaintiff contests the commission's 78.8 percent calculation, but her ultimate quarrel is with the underlying finding of fact that the stream bisects the property. The commission argues that "the function of a writ of certiorari" sought under G. L. c. 249, § 4, "is not . . . to reverse or revise findings of fact," but to correct "error[s] of law or abuse of discretion." See *Tracht* v. *County Commrs. of Worcester*, 318 Mass. 681, 686 (1945). Nonetheless, whether a factual finding is supported by the record is ultimately a legal question, see, e.g., *Ruci* v. *Clients' Security Bd.*, 53 Mass. App. Ct. 737, 740 (2002), and indeed, if factual findings were not subject to review on certiorari for record support, in certain aspects, administrative decisions would be rendered unreviewable.

The commission's finding that the stream bisects the property is amply supported by the record. Plans in the record submitted by the plaintiff herself show a continuous channel that extends beyond the property. And indeed, a DEP administrative law judge's factual findings in an earlier proceeding also conclude that the stream flows off of the property.

[5]The commission apparently read the commentary permitting a smaller buffer zone to mean that, by allowing a smaller buffer zone, it could effectively eliminate the nondisturbance requirement for the larger, regulatorily defined area.

"The Commission has great concerns regarding the removal of 78.8 percent of the forested 100-foot buffer zone along the western side of the bank that is presently providing a substantial buffer to the bank bordering on the stream and providing protection to the bank from the impacts of development. Published evidence indicates that a forested buffer serves to intercept surface runoff, waste water, subsurface flow, and deeper groundwater flows from upland sources for the purpose of removing or buffering the effects of associated nutrients, sediments, organic matter, pesticides, or other pollutants prior to entry into surface waters and groundwater recharge areas. (*The Role and Function of Forest Buffers in the Chesapeake Bay Basin for Nonpoint Source Management*, Nonpoint Source Committee, Chesapeake Bay Program, EPA, February 1993. See also *Wetland Buffer Zones*, Massachusetts Association of Conservation Commissions, 1995.) The forested area also serves to control runoff and to mitigate flooding and water damage to surrounding lands and wildlife habitat downstream."[6]

The plaintiff brought another appeal under the certiorari statute, and the two appeals were consolidated. The Superior Court judge upheld the commission's denial of the permit.[7] After judgment entered, the plaintiff timely filed this appeal.

---

[6]The commission's decision also included a finding that:

"[o]n March 26, 1991, the Commission issued an Enforcement Order to the [plaintiff] to cease and desist cutting and removal of natural vegetation, including trees, within the 100-foot buffer zone . . . prior to filing an application and receiving authorization from the Commission. Evidence that vegetation was cut and removed is shown in photographs dated 1991 submitted by abutters . . . . This violation allowed nonnative species to become established on the site and contributed to 'the highly degraded nature of the channel and the adjoining buffer area' as characterized by the applicant's wetland [ecologist] . . . to support his claim that the proposed plan will improve conditions and promote wetland and buffer interests and functions rather than maintain existing poor conditions. The applicant's prior, illegal disturbance of the site does not justify further disturbances within the buffer zone."

The plaintiff argues that this was not a proper basis for the commission's decision (and that there was no basis for some of the factual findings it contains). Since our decision does not rely on this finding, we need not address the issue.

[7]The plaintiff dismissed without prejudice claims for a regulatory taking

### III.

The standard of review in certiorari actions varies according to the nature of the action for which review is sought. See *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry*, 404 Mass. 211, 217 (1989). On certiorari review, "[a] court will correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff." *Carney* v. *Springfield*, 403 Mass. 604, 605 (1988). In the context of this review of a conservation commission denial of a permit, we ask whether the commission's action was arbitrary or capricious, based upon error of law, or unsupported by substantial evidence. See, e.g., *Fieldstone Meadows Dev. Corp.* v. *Conservation Commn. of Andover*, 62 Mass. App. Ct. 265, 269-270 n.7 (2004); *Rodgers* v. *Conservation Commn. of Barnstable*, 67 Mass. App. Ct. 200, 204 (2006).

In this appeal, aside from a series of arguments that turn on her disagreement with the facts found by the commission, the plaintiff's primary argument is that the commission utilized an unauthorized burden of proof. With this contention, we agree. Section 130-7 of the by-law, which is the legislative act approved by town meeting, the legislative body for the town, see *Local 1652, Intl. Assn. of Firefighters* v. *Framingham*, 442 Mass. 463, 466 n.2 (2004), provides that "[t]he applicant shall have the burden of proving by a preponderance of the credible evidence that the work proposed by him in [the NOI] will not cause significant individual or cumulative harmful effects to the interest sought to be protected by" the by-law.

The commission is authorized to promulgate "rules and regulations to effectuate the purposes of" the by-law, see by-law § 130-6, and we give substantial deference to the commission's reasonable interpretations of the by-law. See *Rodgers* v. *Conservation Commn. of Barnstable*, 67 Mass. App. Ct. at 208. But it is a fundamental principle of administrative law that even a properly promulgated regulation is not valid if it is inconsistent with the legislation it implements. See, e.g., *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595 (1992). Here, the

and continuing trespass against the town. These claims therefore are not before us.

commentary contained in the rules, and upon which the commission relied, imposes a higher burden of proof on the issue of protection of by-law interests (clear and convincing evidence) than that contained in the legislative enactment (preponderance of the credible evidence).[8]

Burdens of proof, captured by phrases like "a preponderance of the evidence," "clear and convincing evidence," and "beyond a reasonable doubt," indicate that before a finding can be made, the adjudicator must have a particular "degree of certainty" about the proposition sought to be proven. See *Concrete Pipe & Prods. of Cal., Inc.* v. *Construction Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622-623 (1993). The clear and convincing evidence standard imposed in this case by the commission requires a higher degree of certainty on the part of the commission that by-law interests will be protected than that specified in the by-law. The regulation thus is inconsistent with the Lexington town meeting's legislative enactment.

The commission argues that under the by-law it has the authority "to adopt uniform rules of general application governing the level of activity that may be permitted in the buffer zone without having a 'significant or cumulatively detrimental effect' on wetlands interests." We agree with this contention, but it does not support utilizing a higher burden of proof on a particular question than that specified by town meeting.

The commission may, and it has, set standards that place limits on the level of activity that are permissible. Section 5(1) of its rules states that "[t]he Commission finds that protection of the interests identified in the By-Law requires that applicants also meet the following additional standards," and what follows includes, for example, a prohibition on work involving storm drains that would result in an increase in the peak rate of surface runoff to certain areas. See rules § 5(2).

While we express no opinion about the lawfulness of that particular restriction, this type of regulation is an appropriate exercise of the authority given to the commission. In similar fashion, where otherwise lawful, the commission may adopt a

---

[8]"The . . . Commission will . . . not approve any smaller buffer zone unless it is persuaded by clear and convincing evidence that the smaller buffer zone will secure the protection of [by-law interests]." Rules § 5(5) commentary.

regulation prohibiting altogether certain projects affecting buffer zones in particular ways if it finds they are harmful to by-law interests.

But the commission has not made a regulatory determination that its "[p]ast experience" with "construction within th[e] buffer zones" (see rules § 5[5] commentary) renders such construction impermissible in all cases because of its effects on by-law interests. Having determined that individual property owners could, on a case-by-case basis, seek through the NOI process to demonstrate before the commission that a smaller buffer zone would, in fact, not cause harmful effects to by-law interests, the commission was not free to require a demonstration of that fact to a higher degree of certainty than that specifically provided for by the by-law.[9]

The commission argues that a higher burden is justified by analogizing its heightened burden of proof to two other waiver provisions. But, unlike the heightened burden of proof at issue here, adoption by the commission of regulations like the two examples it puts forward would not conflict with any specific provision of the by-law. The first example cited by the commission is the variance provision in the Zoning Act, which allows otherwise impermissible activity, but only upon a finding of particular circumstances. See G. L. c. 40A, § 10, inserted by St. 1975, c. 808, § 3.[10] This example is a statutory enactment, but structurally similar rules have been employed by conserva-

---

[9]Although there is no allegation of a due process violation here, this analysis is analogous to that used in determining whether a Legislature's action in defining the procedures that will attend deprivation of a statutorily-created property interest comports with the due process clause of the United States Constitution when the Legislature would have been free not to create the property interest in the first place. Cf. *Cleveland Bd. of Educ.* v. *Loudermill,* 470 U.S. 532, 538-541 (1985) (though a Legislature may have power not to create a property interest at all, the Federal Constitution's due process clause prohibits the Legislature from requiring an individual to take "the bitter with the sweet" by creating an interest "defined by the procedures provided for its deprivation" such that the property interest may be taken away with less process than the due process clause itself would otherwise require).

[10]Section 10 of G. L. c. 40A provides that a variance from a zoning by-law may be granted only where, because of specific circumstances that must be found by the permitting authority, "literal enforcement of the . . . by-law would involve substantial hardship, financial or otherwise, . . . and . . . desirable relief may be granted without substantial detriment to the public

tion commissions, and indeed, one section of the commission's rules (not relevant in the instant matter) allows the requirements of the rules to be waived in certain circumstances.[11]

The second example cited by the commission is 310 Code Mass. Regs. § 10.55(4)(b) (1997). This regulation creates an exception to a general requirement that proposed projects "shall not destroy or otherwise impair any portion of [a bordering vegetative wetland]." See 310 Code Mass. Regs. § 10.55(4)(a) (1997). Section 10.55(4)(b) allows destruction of up to 5,000 square feet of a bordering vegetative wetland if certain mitigation activities are undertaken.[12]

These provisions do not operate by raising the applicant's burden of proof, and therefore neither type would conflict with the burden of proof concerning harm to by-law interests adopted by town meeting in the by-law. Nor are these the only types of mechanisms available to the commission, should it find them appropriate, to protect by-law interests in light of its conclusion that, in most cases, residential building and construction like that proposed in the instant case would be harmful to those interests. Regulations specifying the substantive conditions that would render a project adequately protective of by-law interests such that compliance with a general prohibition on such building and construction would be excused, or specifying the nature and quality of the evidence that would be accepted in support of an application seeking to undertake the activities proposed, would not conflict with the burden of proof that town meeting has specified with respect to the question of harm to by-law interests.[13]

---

good and without nullifying or substantially derogating from the intent or purpose of such . . . by-law."

[11]Section 9 of the rules (Waiver of Regulations) provides in pertinent part:

> "Strict compliance with these rules and regulations may be waived when, in the judgment of the . . . Commission, such action would serve a substantial public interest or when strict compliance would result in severe economic hardship far greater in magnitude than the public interest to be served."

[12]Title 310 Code Mass. Regs. § 10.55(4)(b) (1997) gives permit-issuing authorities discretion to allow the destruction of up to 5,000 square feet of a bordering vegetative wetland if a "replacement area" of equal size is created that complies with various conditions set forth in the regulations.

[13]The commission thus, for example, might require that applicants demon-

While our conclusion requires a remand, the plaintiff urges that the decision below is not supported by substantial evidence, and that we must go further and reverse the commission outright. She argues that under the preponderance standard (or, she argues, even the higher clear and convincing evidence standard), she was entitled to a permit. She argues that "all the evidence" in the record supports her position that the proposed project "protects and even improves buffer zone interests."

We disagree that reversal is required under the preponderance standard. The commission referred to a publication indicating that work like that proposed would be harmful to by-law interests. See The Role and Function of Forest Buffers in the Chesapeake Bay Basin for Nonpoint Source Management (Nonpoint Source Committee, Chesapeake Bay Program, EPA, Feb. 1993). We think an administrative body like the commission charged with a specialized task may take notice of published scientific works as the commission did here. The commission concluded in reliance on this work that the application must be denied because "a forested buffer serves to intercept surface runoff, waste water, subsurface flow, and deeper groundwater flows from upland sources for the purpose of removing or buffering the effects of associated nutrients, sediments, organic matter, pesticides, or other pollutants prior to entry into surface waters and groundwater recharge areas."

The plaintiff argues that the cited publication is inapplicable to the circumstances presented on the subject property. But that publication contains basic science about forested buffers. Common sense suggests, at least until demonstrated otherwise, that trees function in the same way in Lexington as they do in the

strate their proposed projects differ in enumerated ways from ordinary proposals for such building and construction; it might require that certain types of evidence be presented in support of an application; or, as the plaintiff herself suggests, it might exercise the power it already has been provided in the by-law to engage its own experts to evaluate the property or an applicant's submissions. See, e.g., by-law § 130-9 (applicant may be required to pay for the commission's retention of expert consultants). Cf. by-law § 130-7 (commission is entitled to deny the permit on the basis that the evidence is inadequate to allow the commission to make a determination that the proposed work will not cause significant harm to by-law interests). None of these actions would involve adoption of a burden of proof on the question of harm to by-law interests at variance with that in the by-law.

Chesapeake Bay Area, which stretches from New York to Virginia.[14]

The judgment is vacated, and a new judgment shall enter vacating the decision of the commission and remanding the matter to the commission to apply the appropriate burden of proof in the first instance.[15]

*So ordered.*

---

[14]We do think that the references to the two published works in the commission's decision could have spelled out more clearly their relevance to the property at issue. Indeed, neither we nor plaintiff's counsel have been able to locate a copy of the source entitled Wetland Buffer Zones (Mass. Assn. of Conservation Commissions 1995) (see *supra*, discussing the commission's findings) on which, consequently, we do not rely. Should the commission conclude in its decision on remand that the plaintiff has failed to meet the preponderance standard, and should it decide to rely in any measure on the same published sources, it will have the opportunity to explain more fully the relevance of the science contained in them to its determination. In addition, if the commission were to articulate its "past experience" with buffer zone construction, see rules § 5(5) commentary, it might make clearer any relevant shortcomings it might find in the plaintiff's, or any subsequent applicant's, proposal. This is not to say that the plaintiff's evidence will be insufficient to carry her burden on remand, a question about which we express no opinion. But in general, administrative decisions containing more thorough explanations will aid courts immeasurably in any subsequent appellate review.

[15]In light of our conclusion that a remand is necessary, we need not reach the plaintiff's argument that the rule against disturbing more than fifty percent of the contiguous buffer zone is inapplicable because, contrary to a finding made by the commission, none of the buffer zone supports a "natural community." See rules § 5(5)(C). The plaintiff's brief claims that the site does not support "important wildlife habitat functions," see 310 Code Mass. Regs. § 10.60(2) (1997), implicitly suggesting that this is what is meant by "natural community." In this litigation, the commission, by contrast, suggests that the term "natural community" means any land that is naturally vegetated, excluding only paved or artificially landscaped areas. We are required to defer to the commission's authoritative construction of its regulation so long as it is reasonable, but a litigating position is not entitled to deference. Cf. *O'Connell* v. *Shalala*, 79 F.3d 170, 179 (1st Cir. 1996). On remand, should the commission determine that fifty percent or more of the contiguous buffer zone supports a natural community, it should specify its construction of that phrase.