NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1304
23-P-1305

JAMES HALLECK HOELAND, trustee,[1]

vs.

CONSERVATION COMMISSION OF WELLFLEET.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, James Halleck Hoeland, as "Trustee of the Family Trust Established Under Article IV, Paragraph (E)(1) of the Grantor Retained Annuity Trust of Mark Blasch Dated October 23, 2008" (trust), appeals from a Superior Court judgment affirming the decision of the defendant conservation commission of Wellfleet (commission) to deny the trust's application to construct a coastal engineering structure (CES) on a coastal bank located on the trust's property.  Because the local

---

[1] Of the Family Trust Established Under Article IV, Paragraph (E)(1) of the Grantor Retained Annuity Trust of Mark Blasch Dated October 23, 2008.

environmental protection regulations are more restrictive than State regulations, we affirm.

Background. 1. The trust's project. The trust owns property in Wellfleet that contains a single-family residential dwelling constructed in 2010.[2] The property also contains a costal bank as defined in the Wetlands Protection Act, G. L. c. 131, § 40 (act), and the State regulations promulgated thereunder (State regulations). See 310 Code Mass. Regs. § 10.30 (2014).[3] The dwelling is located near the top of the eroding coastal bank.[4] On September 12, 2018, the trust filed a notice of intent (NOI) with the commission seeking an order of conditions under the provisions of the act, the Wellfleet environmental protection bylaw (bylaw), and the Wellfleet environmental protection regulations (local regulations), to

---

[2] The property contained a dwelling prior to August 10, 1978. In 2007, the commission issued an order of conditions authorizing the demolition of the structure and the construction of the dwelling at issue here.

[3] Unless otherwise noted, all references to the State regulations are to the 2014 version, which was in effect in 2018 when the trust filed its notice of intent. A coastal bank is defined in 310 Code Mass. Regs. § 10.30(2) as "the seaward face or side of any elevated landform, other than a coastal dune, which lies at the landward edge of a coastal beach, land subject to tidal action, or other wetland."

[4] In 2018, the dwelling's foundation and deck were located within twenty-five feet and fourteen feet, respectively, from the top of the coastal bank. Those distances have since decreased.

construct a CES on the coastal bank to prevent further erosion and protect the dwelling. Pursuant to the State and local regulations, the commission may permit a CES on a coastal bank to prevent damage to buildings constructed prior to August 10, 1978.[5] See 310 Code Mass. Regs. § 10.30(3). In November 2018, the trust revised the proposal and submitted additional materials to the commission. The proposed CES consisted of a 241-foot-long rock revetment, covered with fiber rolls and a planted sand cover, with annual sand nourishment.

2. <u>First decision and proceedings</u>. In December of 2018, after a public hearing, the commission voted to deny the NOI. In its decision, the commission found that the trust was not entitled to a CES under the local regulations because the dwelling on the property was constructed in 2010 and since August 10, 1978, "two separate dwellings have been built and removed from the site." It also found that the "armoring" of the property through the construction of a CES "is likely to lead to significant erosion on abutting properties."

On February 1, 2019, the trust brought an action in the nature of certiorari in the Superior Court pursuant to G. L.

---

[5] As discussed <u>infra</u>, the State regulations also provide that a CES may be permitted to protect post-August 10, 1978 reconstructions of pre-August 10, 1978 structures. See 310 Code Mass. Regs. § 10.30(3).

c. 249, § 4. On April 24, 2020, a judge allowed the trust's motion for judgment on the pleadings. The judge found that the commission was required to include a "specific condition" pursuant to 310 Code Mass. Regs. § 10.30(5), in the 2007 order of conditions that no CES shall be permitted "if at that time it deemed the reconstruction of the structure to be a 'new building,'" i.e., one constructed for the first time after August 10, 1978.[6] The judge acknowledged that the local regulations were more stringent than the act in that they did not "allow[] for the protection of pre-1978 buildings 'reconstructed' after 1978," but concluded that the denial of the NOI on the basis of categorizing the structure as "[post]-1978" was arbitrary and capricious in light of the absence of the specific condition.[7] The judge remanded the matter to the

---

[6] Title 310 Code Mass. Regs. § 10.30(5) provides that the order of conditions and certificate of compliance for "any new building within 100 feet landward of the top of a coastal bank permitted by the issuing authority" under G. L. c. 131, § 40, must contain the following condition: "310 CMR 10.30(3), promulgated under [G. L. c. 131, § 40], requires that no coastal engineering structure, such as a bulkhead, revetment, or seawall shall be permitted on an eroding bank at any time in the future to protect the project allowed by this [o]rder of [c]onditions."

[7] The judge further concluded that (1) the commission's denial of the application "based on findings of insufficient information" provided by the trust was not supported by substantial evidence and was thus arbitrary, and (2) the commission "applied a too stringent interpretation" of the "no feasible alternative" requirement and imposed an undue burden on the trust.

commission to "consider the proposal anew" based on the "information provided to it."[8]

On May 7, 2020, the trust filed a motion in the Superior Court to vacate the judgment and reconsider the April 24, 2020 decision. The trust asked the Superior Court judge to (1) order the commission to treat the dwelling as a pre-August 10, 1978 structure on remand, (2) consider the proposal based on the administrative record alone, and (3) retain jurisdiction over the matter pending the commission's reconsideration of the NOI. On June 22, 2020, the judge, treating the motion as one to alter and amend, agreed that the Superior Court would retain jurisdiction and instructed that, upon remand, "the [c]ommission should review the proposal pursuant to section 2.03(2) of the bylaw, which authorizes the [c]omission to allow a CES provided certain requirements are met." The judge concluded that the record contained "sufficient information for the [c]ommission to evaluate the proposal and render a decision on the issues to be resolved on remand." An amended judgment entered on June 24, 2020.

---

[8] The judge instructed that, if the commission required additional information on remand, "it must specify the reason why the information provided i[s] insufficient and identify the information sought."

5

The commission filed a notice of appeal from the April 24, 2020 order allowing the trust's motion for judgment on the pleadings, and the amended judgment.  In response, the trust filed a motion to strike the notice of appeal or, in the alternative, vacate the amended judgment.  On December 28, 2020, a different Superior Court judge allowed the trust's motion in part and vacated the amended judgment.  The judge concluded that "[i]t remains an Order of the Court" that (1) the commission's decision to treat the dwelling as a post-August 10, 1978 structure was arbitrary, (2) the matter was remanded for the commission to "evaluate the proposal and render a decision on the issues to be resolved," and (3) the commission was to commence a further public hearing within sixty days.[9]

3.  Second decision and proceedings.  On February 17, 2021, after the matter was remanded, the commission held a public hearing.[10]  During the hearing, the commission accepted

_____

[9] There is no dispute that the appeal associated with the commission's first decision and the subsequent Superior Court orders entered before the remand is moot.  Nonetheless, where the trust's appeal to the Superior Court from the commission's first decision and the resulting Superior Court orders were interlocutory, everything in the record is properly before us on appeal.

[10] Before the remand hearing, on February 3, 2021, the commission held a hearing regarding an after-the-fact NOI that the trust had filed.  As an interim measure, the commission authorized the trust to install a "three-tier, sand filled, coir envelope array at the toe of the existing coastal bank."  On March 5, 2021, the commission issued an after-the-fact order of

6

additional evidence in the form of letters, reports, and testimony. On March 3, 2021, the commission issued a decision denying the trust's application. The commission found that the Superior Court had "remanded the case back to the [c]ommission as a pre-1978 structure," but referenced its prior conclusion that the dwelling was not a pre-August 10, 1978 structure. Nevertheless, it found that the proposal had not met the performance standards under § 2.03(4)(a)(2) of the local regulations. It further found that the trust had failed to demonstrate that the project would have "no significant adverse impact" on the adjacent and nearby coastal resource areas and that the trust had not provided proof that there were "no feasible alternative methods of protecting the building."

On April 15, 2021, the trust again sought certiorari review in the Superior Court.[11] On September 27, 2023, a Superior Court judge allowed the commission's cross motion for judgment on the pleadings. The judge found that, "giving due weight to the [c]ommission's interpretation of the bylaw . . . the commission

_____

conditions authorizing the project. No issues regarding these actions are before us.

[11] Although the Superior Court had retained jurisdiction over the matter, the trust commenced a separate action by filing another writ of certiorari in the Superior Court. On February 7, 2023, the two actions were consolidated in the Superior Court.

7

was entitled to categorize the [t]rust's house as a post-1978 structure." The judge also found that the commission had ample evidence from which it could conclude that the proposed CES would reduce the ability of the coastal bank to "provide sediment to coastal beaches, coastal dunes, barrier beaches, tidal flats, or sub-tidal areas." On October 2, 2023, judgment entered affirming the commission's decision denying the trust's second application for an order of conditions. The trust appealed therefrom.[12]

Discussion.[13] 1. Standard of review. We review the allowance of a motion for judgment on the pleadings de novo. Boston v. Conservation Comm'n of Quincy, 490 Mass. 342, 345 (2022).

---

[12] Although the trust's notice of appeal includes an appeal from an order denying its motion to strike, it makes no separate argument on appeal as to that order and we do not address it.

[13] Following oral argument in this appeal, the commission filed a motion to dismiss the appeals as moot because the trust had sold the property to a party who "demolish[ed] the structure at the [p]roperty," such that "there is no longer any structure left at the [p]roperty." The trust opposed the motion to dismiss arguing, inter alia, that the order of conditions sought by the trust is still a live issue because, "if the [trust] has a legal right to construct the CES, such CES is still of value to protect the [p]roperty, regardless of whether the [d]welling exists." Although there is a measure of persuasiveness to the commission's argument, we assume, without deciding, that the case is not moot. See Styller v. Zoning Bd. of Appeals of Lynnfield, 487 Mass. 588, 595 (2021), quoting Rosado v. Wyman, 397 U.S. 397, 403 (1970) ("Unlike standing, 'mootness [is] a factor affecting [the court's] discretion, not its power,' to decide a case").

8

"In an action in the nature of certiorari challenging a wetlands permit decision made by a conservation commission pursuant to a local by-law, our review is limited at most to whether the commission's decision is supported by substantial evidence in the administrative record, whether the commission's action was arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law."

Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733-734 (2018). A decision is arbitrary and capricious if "there is no ground which 'reasonable men might deem proper' to support it" (citation omitted). T.D.J. Dev. Corp. v. Conservation Comm'n of N. Andover, 36 Mass. App. Ct. 124, 128 (1994). The commission's selection between two conflicting evidentiary views will not be disturbed on appeal as long as that selection was reasonable. See Conservation Comm'n of Falmouth v. Pacheco, 49 Mass. App. Ct. 737, 739 n.3 (2000).

2. Interpretation of the local regulations. The trust argues that the commission's determination that the dwelling was not a pre-August 10, 1978 structure was arbitrary and capricious because, consistent with the act and State regulations, the local regulations "demonstrate an intent to protect properties improved by buildings prior to August 10, 1978."[14] Put another

_____

[14] The trust also claims that the judge erred when he determined that the pre-August 10, 1978 status of the dwelling had been before the commission on remand. Even assuming this to be true, it is of no consequence where our review of the motion for judgment on the pleadings is de novo. As mentioned supra, the commission noted in its second decision that the matter was remanded "as a pre-1978 structure," and treated the dwelling as

9

way, the trust contends that the commission erred by interpreting the local regulations to require that the dwelling on the property had to be constructed prior to August 10, 1978, to be entitled to pre-1978 status. The argument is unavailing.

The act "establishes Statewide minimum wetlands protection standards, and local communities are free to impose more stringent requirements." Oyster Creek Preservation, Inc. v. Conservation Comm'n of Harwich, 449 Mass. 859, 866 (2007). We give substantial deference to the commission's reasonable interpretation of its bylaws and regulations. See Nelson v. Conservation Comm'n of Wayland, 90 Mass. App. Ct. 133, 134 (2016); Rodgers v. Conservation Comm'n of Barnstable, 67 Mass. App. Ct. 200, 208 (2006). The State regulations provide, in pertinent part:

> "[n]o new . . . coastal engineering structure shall be
> permitted on such a coastal bank except that such a coastal
> engineering structure shall be permitted when required to
> prevent storm damage to buildings constructed prior to the
> effective date of 310 CMR 10.21 through 10.37 . . . (August
> 10, 1978), including reconstructions of such buildings
> subsequent to [August 10, 1978]."

---

such in making its findings. However, the commission referenced the finding from its first decision -- that the dwelling was not a pre-August 10, 1978 structure -- in the second decision and the finding was revisited by the Superior Court judge in entering judgment on the pleadings in favor of the commission. Thus, we first address the commission's denial of the trust's application based on its finding that the structure was not a pre-August 10, 1978 structure under § 2.03(4)(a)(2) of the local regulations.

10

310 Code Mass. Regs. § 10.30(3).  By contrast, § 2.03(4)(a)(2) of the local regulations provides only that "the [c]ommission may allow a CES when required to prevent storm damage to buildings constructed prior to August 10, 1978."  There is no provision in the local regulations that affords pre-August 10, 1978 status to reconstructions that occurred after August 10, 1978.  The local regulations are thus more restrictive than the act regarding the construction of a CES on properties improved by reconstructions of pre-August 10, 1978 structures.

The trust also argues that the commission's failure to include the specific condition required by 310 Code Mass. Regs. § 10.30(5) for new buildings in the 2007 order of conditions authorizing the dwelling's construction "demonstrates that the [c]ommission intended that the permitted dwelling on the [p]roperty would maintain its status as a pre-1978 dwelling." Here, under the act and State regulations, the dwelling would maintain its status as a pre-August 10, 1978 dwelling and, therefore, no specific condition was required.  Although the reconstruction was not protected as a pre-August 10, 1978 dwelling under the local bylaw and local regulations, this did not trigger the condition where, unlike the act, the local regulations do not contain such a requirement.  Indeed, including a condition designating certain constructions as "new buildings" would have been unnecessary where, as discussed

11

above, reconstructions are not afforded pre-August 10, 1978 status under the local regulations. Thus, the commission's conclusion that the dwelling on the trust's property was not a pre-August 10, 1978 structure was supported by its reasonable interpretation of § 2.03(4)(a)(2) of the regulations.

In accordance with the commission's interpretations of its regulations, the proposal was subject to review under section 2.03(4)(a)(1), which provides that a CES that "reduce[s] the ability of the [c]oastal [b]ank to provide sediment to coastal beaches, coastal dunes, barrier beaches, tidal flats, or sub-tidal areas shall not be allowed." There was substantial evidence that the trust's proposal did not meet that standard.[15] The very purpose of the proposed CES was to "stop the entire coastal bank from eroding," thereby causing a reduction in the supply of sediment. The commission's decision was fully supported and was not arbitrary or capricious. See Rodgers, 67 Mass. App. Ct. at 205-206, quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981) ("A finding is based upon substantial evidence if 'experience permits the reasoning mind to make the finding; [i.e.,] whether the finding

_____

[15] Counsel for the trust conceded at oral argument that the "nature of the CES is to prevent any further erosion of the coastal bank," and thus it would not be possible to meet the standard under § 2.03(4)(a)(1).

12

could have been made by reference to the logic of experience'"
[emphasis omitted]).

3.  Denial under § 2.03(4)(a)(2) of the local regulations.
Even assuming that the dwelling on the trust's property was
entitled to pre-August 10, 1978 status, there was substantial
evidence in the administrative record to support the
commission's conclusion in its second decision that the trust
did not satisfy the performance standards under section
2.03(4)(a)(2) of the local regulations.  Section 2.03(4)(a)(2)
provides that the commission "may" permit a CES to protect
buildings constructed before August 10, 1978, so long as certain
requirements are met.  Those requirements include, inter alia,
that the CES is designed to have "no significant adverse impact"
on adjacent or nearby resource areas and that the applicant
provide an "alternatives analysis."[16]

Here, the commission's expert opined that the proposed CES
could result in "flanking," a process by which "adjacent
properties continue to erode naturally, while the project site
maintains a shoreline position further seaward than necessary to
protect the house."  The Department of the Interior also
expressed concern with the effects of the proposal and predicted

---

[16] The alternatives analysis requires the applicant to
provide "[p]roof that there are no feasible alternative methods
of protecting the building other than the proposed CES."

13

that it would have "severe, adverse impacts on the resources" and noted that the effects "will not be minimal."  Moreover, the coir envelopes, although not a permanent solution, were an existing alternative, and the trust's expert testified to the commission that the measure "should be effective in preventing bank retreat for 2 to 3 years and could be renewed at that point."

The trust also contends that the commission's decision was "tainted" because it accepted new materials and supplemented the existing record.  In remand proceedings, "[t]he judge, not the petitioner, sets the terms of the remand."  Nasca v. Board of Appeals of Medway, 27 Mass. App. Ct. 47, 49 (1989).  We note that it is unclear what orders remained in effect regarding the scope of the remand.[17]  In any event, the trust has failed to demonstrate that it was prejudiced as a result of the commission accepting additional information.  The commission could have concluded, based solely on the evidence in the administrative record from its first decision, that there was substantial evidence that the proposal did not meet the performance standards.

---

[17] Unlike the Superior Court judge's April 24, 2020 written decision on the cross motions for judgment on the pleadings and the subsequent amended order, the December 28, 2020 order vacating the amended judgment was silent on whether the commission could accept new information.

14

In sum, the commission's findings were supported by substantial evidence and its reasonable interpretation of the local regulations is entitled to substantial deference. See Rodgers, 67 Mass. App. Ct. at 208.

Judgment entered October 2, 2023, affirmed.

By the Court (Neyman, Ditkoff & Wood, JJ.[18]),

Clerk

Entered:  May 7, 2025.

---

[18] The panelists are listed in order of seniority.